68 P.3d 1138 (2003)
116 Wash.App. 924
Louise KEMMER, Appellant,
v.
Ernest E. KEISKI, et al., Respondents.
No. 27782-4-II.
Court of Appeals of Washington, Division 2.
May 20, 2003.
*1139 Christopher Martin Constantine of Counsel Inc. PS, Tacoma, WA, for Appellant.
Daniel Herbert Bigelow, William John Faubion, Cathlamet, WA, for Respondents.
MORGAN, J.
By means of a notice of appeal filed September 6, 2001, Louise Kemmer purports to appeal two judgments. The first, entered on May 31, 2000, granted a 12-foot easement across her property. The second, entered on August 10, 2001, expanded the 12-foot easement to 30 feet at some points. Holding that the first judgment was not timely appealed, we decline to review or disturb it. Holding that the second judgment was precluded by the first, we vacate and reverse it.
Many years ago, Fritz Keiski owned property that straddled Highway 101 in Pacific County. On a date the record does not show, he divided the property into three lots, each of which also straddled Highway 101. He conveyed one lot to each of his three children.
One of Fritz's children was a son named Ernest. On a date the record does not show, Ernest transferred his lot to his own son, Fritz's grandson, Ernest E. Keiski (hereafter "Keiski"). In 1969, Kemmer acquired another of the three lots, apparently from one of Ernest's siblings or a successor. Keiski and Kemmer are now neighbors, his western boundary being her eastern one.
When Fritz owned the property, he used an unimproved driveway to access his land north of the highway, including that which later became the northern portion of Keiski's lot. The highway right of way included a drainage ditch near its northern edge. The ditch had a culvert in it at a point opposite what later became Kemmer's lot. Fritz would follow the unimproved driveway from the highway, across the top of the culvert, onto what is now the northern portion of Kemmer's lot, then turn east to reach what is now the northern portion of Keiski's lot.
In 1997, Keiski blocked Kemmer's access to certain land south of the highway. Kemmer sued, claiming title by adverse possession. On February 13, 1998, Keiski counterclaimed for an easement allowing him to travel from the highway, across the culvert, onto Kemmer's property, then east to his own property.
A bench trial was held on January 5, 2000 and February 28, 2000. During closing argument, Keiski moved to amend his pleadings to allege an "easement implied by necessity[.]"[1] Kemmer did not object to the motion to amend, but she moved for a continuance so she could brief the merits of such an easement. The court granted both motions.
On April 6, 2000, the court issued a one-sentence written opinion. It said that Keiski was "entitled to a[n] implied easement by necessity along the southerly 12' of Plaintiff's proposed route."[2]
On May 31, 2000, the court entered written findings of fact, conclusions of law, and a judgment. The findings stated in part:
8. Regarding the property of the parties lying northerly of Highway 101, at the time of ownership by the original grantor there was a crossing northerly from Highway 101 onto [Kemmer's] property. The common grantor of the parties would use that crossing and then bear easterly to get to the parcel now owned by [Keiski].
9. The area used to cross this property to access [Keiski's] property was unimproved.
*1140 10. The area necessary ... for an easement to access [Keiski's] lands across [Kemmer's] property is as follows: [Inserted here was a legal description of the easement that the court was then intending to grant.]
11. At the time [Kemmer] purchased from the common grantor, there was clear evidence that the access to property now owned by [Keiski] north of Highway 101 was by crossing [Kemmer's] property from Highway 101.[[3]]
The conclusions stated in part:
4. [Keiski] is entitled to an easement by necessity to use the crossing on [Kemmer's] property which allows access from Highway 101 north across to [Kemmer's] property. The easement by necessity shall then turn easterly and continue until it reaches [Keiski's] property. The easement may not exceed 12 feet in width....[[4]]
The judgment stated in part:
3. [Keiski] is hereby granted an easement by necessity to use the crossing on [Kemmer's] property which allows access from Highway 101 north across to [Kemmer's] property. The easement by necessity shall then turn easterly and continue until it reaches [Keiski's] property. The easement shall not exceed 12 feet in width.[[5]]
Although the judgment resolved all claims and all parties then pending before the court, no one appealed it at that time. Nor, then or later, did anyone move to alter, amend, or set it aside.
On September 11, 2000, Keiski filed a motion for contempt (i.e., a motion asking the court to enforce the judgment by using its contempt power). In a supporting affidavit, he alleged that Kemmer had fenced both sides of "the twelve foot easement road."[6] He then went on:
10. The fence they built is tight against the easement line. I cannot now get into my property with my pickup, much less a dump truck, farm truck, log truck or perhaps anything bigger than a compact tractor....
11. The error in the Court's ruling required use of the smaller turning radius on the surveyed roadway designed by [the surveyor]. This radius is so tight I cannot use the roadway;
12. I had planned on using the roadway for access to my 13 acres of trees and to develop a building site on the hill. I am now unable to do so. Further, if there is a fire the fire department will not be able to gain access to my property ... with their trucks[.][[7]]
Although his motion was only for Kemmer's alleged contempt, he claimed that the court should not have "limit[ed] the width of my access road to twelve feet[,]" and that the court should now "clarify" its judgment by "expanding the easement road to the original twenty feet requested[.]"[8]
On September 18, 2000, Kemmer countered with her own motion for contempt. She asserted that she had fenced the easement because a large truck Keiski had hired to dump rock on the easement had not stayed within the easement's 12-foot width. She added:
At the time of trial, the evidence was taken in argument made to the Court regarding this easement. It is an easement which arose out of the previous usage by the parties' common grantor. The previous usage by the common grantor clearly did not include either rocking the easement [or] using large dump trucks on the easement. After a full trial, the Court made its ruling and [Keiski] now is trying to expand the ruling by a motion for contempt. This is entirely inappropriate, [and] the Court's ruling is res judicata....[[9]]
*1141 On November 15, 2000, Keiski filed a letter from one Lyle Hutchens, an employee of a company named DEVCO Engineering. Hutchens stated:
We have reviewed the access easement.... We understand this easement was intended to provide ingress and egress for a loaded log truck to your property.
The easement as proposed does not provide sufficient area to accommodate the turning movement of any typical log truck nor does it provide sufficient area for the turning movement of any typical dump truck, even without a trailer.
If we were to layout [sic] an easement to accommodate the ingress and egress of a typical log truck to your property, it would encompass, at a minimum, the area highlighted on the accompanying copy of the survey. This highlighted area is the minimum for a 90° turning movement for a vehicle with a 62' maximum axle-to-axle length. In reality the easement should be larger to allow for driver perceptions and to avoid any wheel tracks on adjacent property.[[10]]
On November 17, 2000, Kemmer responded in writing, in part as follows:
The court will remember that at the time of the severance of the property from the common grantor, that what is now asked to be an easement that a logging truck could [drive] over, was nothing but a path of trod-down grass. There was no gravel or any other type of road improvement material. There was no evidence whatsoever that it had ever been used for logging and, as a matter of fact, at trial there was testimony that when the Keiski property was logged that the logging trucks used the driveway of a neighbor further to the east and did not use this easement at all.[[11]]
She concluded that "where the only use at the time of the implied grant was for either walking across the road to the field or in the summer driving a pickup truck," there was no evidence supporting an expansion of the easement "to the point where a logging truck could be turned as now proposed...."[12]
After taking the matter under advisement, the court issued a series of written rulings. On November 28, 2000, the court stated in writing:
The issue of implied easement arose late in the case and was not adequately briefed and/or argued at trial. The parties are now focusing on the scope of the implied easement....
Here the dominant estate consisted in large part of timberland. It seems clear that the parties' intent must have been for the dominant estate to be able to access its timberland and harvest the timber at an appropriate time. This requires the use of large equipment and log trucks. Thus, it appears that the parties['] intent would have been to create an easement large enough to allow log truck and equipment access.
[Kemmer] argues that the credentials and the conclusions of Lyle Hutchens have not been sufficiently established. The Court finds this to be true. Therefore, at this time the Court cannot rule on the scope of the implied easement. However, it does appear that this easement will have to be expanded.[[13]]
On December 13, 2000, the court stated in writing:
Keiski may not improve the access to the full width needed for logging until such time as logging or similar activity is actually contemplated. It appeared (from the video that the Court reviewed) that it is possible to access the Keiski property with a large crew cab pickup. The Court would invite [Keiski] to indicate why any further physical expansion of the easement is necessary at the present time. It should, however, be understood that a larger easement will be ordered by the Court for future use for logging purposes.[[14]]
*1142 On July 6, 2001, the trial court stated in writing that it would expand the width of the easement to be "the minimum to allow a log truck to pass, ... as set forth on [Keiski's] most recent [proposal]."[15]
On August 10, 2001, the court signed and entered a document titled, "Judgment Clarifying Scope of Easement by Necessity[.]"[16] This document purported to expand the easement from 12 feet to nearly 30 feet at the curve where the easement turns east. It also purported to permit the easement to be used by large dump trucks and logging trucks.[17] It stated:
1. [Keiski] is hereby granted an easement of necessity across [Kemmer's] property sufficient to allow dump truck/and log truck access to [Keiski's] property.
2. The width and location of said easement of necessity is as contained in the attached Exhibit 1 prepared by DEVCO Engineering.
3. [Keiski] is allowed to improve the access to the width necessary for log truck access at the present time.
4. [Keiski] is presently allowed to use the access for all vehicles up to the size of a dump truck as described in attached Exhibit 2 prepared by DEVCO Engineering.
5. Commencing in the year 2026 [Keiski] shall be allowed to use the full access easement for log trucks.[[18]]
On September 6, 2001, Kemmer appealed to this court. In her notice of appeal, she designated for review both the judgment of May 31, 2000 and the judgment of August 10, 2001. We hereafter refer to these judgments as the May 2000 judgment and the August 2001 judgment, respectively.

I.
We begin by examining the preclusive effects of the May 2000 judgment. When a judgment disposes of all claims and all parties, it is both appealable[19] and preclusive.[20] It remains appealable for 30 days.[21] If not appealed in that period of time, it directly precludes all further proceedings in the same case,[22] except "clarification"[23] and enforcement proceedings,[24] and it collaterally precludes other suits based on the same claim.[25]
In this case, the May 2000 judgment disposed of all claims and all parties. It was not appealed within 30 days of its entry. No one sought reconsideration or amendment within the 10 days allowed by CR 59. No one sought to set it aside under CR 60. Kemmer expressly asserted its preclusive effect when, on September 18, 2000, she *1143 claimed res judicata. At first glance, the May 2000 judgment precluded both the August 2001 judgment and the present appeal.

II.
Each party partially acceptsand partially deniesthis reasoning. Kemmer contends that the May 2000 judgment precludes the August 2001 judgment but not her current appeal from the May 2000 judgment. Keiski seems to respond that the May 2000 judgment did not preclude the August 2001 judgment, but that it does preclude Kemmer's current appeal of the May 2000 judgment. Although neither party is employing preclusion consistently, we turn briefly to their arguments.

A.
As just indicated, Kemmer claims that the May 2000 judgment precluded the August 2001 one. Citing CR 59, she argues that Keiski was required to bring a motion to alter or amend the judgment "not later than 10 days after entry of the judgment";[26] that he did not do that; and that "[t]he trial court therefore lacked authority to entertain" such a motion.[27] As far as we can tell, Keiski answers that the August 2001 judgment was only a "clarification" of the May 2000 judgment.
As stated in Rivard v. Rivard,[28] an order "clarifying" a judgment explains or refines rights already given.[29] It neither grants new rights nor extends old ones.[30] Unlike a modification, amendment, or alteration, which must be accomplished under CR 59, CR 60 or some other exception to preclusion, a "clarification" can be accomplished at any time.
Here, the August 2001 judgment expanded the May 2000 judgment's easement from 12 to 30 feet at some points. It also ordered, for the first time, that the easement be open to log trucks and dump trucks. It constituted a substantial and significant modification of the May 2000 judgment, not a mere "clarification" of the May 2000 judgment. It was not accomplished in compliance with CR 59, CR 60, or any other exception to preclusion that we are aware of. We hold that the August 2001 judgment was precluded by the May 2000 judgment.

B.
As already indicated, Keiski claims that the May 2000 judgment precludes Kemmer's current appeal. He asserts that Kemmer was required to appeal within 30 days of May 31, 2000; that she did not do that; and that she is not now entitled to convert her appeal of the August 2001 judgment "into a renewal of her long-expired right to appeal" the May 2000 judgment.[31] Kemmer responds that Franz v. Lance[32] and Wlasiuk v. Whirlpool[33] entitle her to appeal the May 2000 judgment even though she did not file a notice of appeal until September 2001.
Franz is a "per curiam" (unsigned) opinion that lacks sufficient facts for us to understand it. Hence, we add facts from the trial court's file.
In 1989, the Franzes sued the Lances to quiet title and obtain damages for trespass. In August 1990, the Franzes prevailed after a bench trial.[34] On October 19, 1990, the Franzes filed a "Motion and Brief for Award *1144 of Attorney Fees and Expenses[,]" together with supporting documents.[35] On October 26, 1990, the Lances responded. On October 29, 1990, the Franzes proposed a form of judgment which, if entered, would have quieted title, awarded damages of $29,000, and assessed $19,933 in "[a]ttorneys' [f]ees and [l]itigation [e]xpenses."[36] The trial court accepted those parts of the form that quieted title and granted damages. The trial court reserved ruling on,[37] and struck, those parts of the form that assessed "attorney fees and litigation expenses."[38] No one appealed.
During the ensuing months, the parties continued to submit materials pertaining to attorney fees and litigation expenses. On February 25, 1991, the trial court ruled that the Lances had known their claims "were unfounded"; that the Lances had "proceeded in bad faith";[39] and that the Lances had wrongfully caused the Franzes to incur $12,799.80 in attorney fees and $1217.89 in litigation expenses. On June 4, 1991, the trial court entered a "supplemental judgment" granting those amounts to the Franzes.
The Lances appealed to Division One. Their notice of appeal designated the supplemental judgment entered in June 1991, but not the initial judgment entered in October 1990. On June 21, 1991,[40] Division One refused to review the October 1990 judgment, reasoning that it had not been appealed within 30 days of the date of its entry.
The Lances petitioned for review of Division One's ruling, which the Supreme Court granted. Holding that "[a] party need not file a notice of appeal within 30 days of every appealable order or judgment but may instead await the final decision in the case[,]"[41] and apparently construing the June 1991 decision as "the final decision in the case[,]"[42] the Supreme Court directed Division One to review the October 1990 judgment under the notice of appeal filed in June 1991.
Wlasiuk v. Whirlpool[43] was much like Franz. On July 30, 1993, in a document titled "Judgment," the trial court listed a judgment debtor, a judgment creditor, and the amount due. The court was not ready to resolve Wlasiuk's then-pending claim for attorney fees, so it stated that he would be "awarded reasonable attorneys' fees and expenses in an amount to be determined later by the Court."[44] On September 24, 1993, in a document titled "Amended Judgment," the trial court reiterated its earlier "Judgment" and added an awards of fees and costs. Whirlpool appealed within 30 days of the "Amended Judgment," but not within 30 days of the initial "Judgment," so Wlasiuk moved to bar review of the initial "Judgment." Following Franz, Division One denied the motion.
Franz and Wlasiuk hold that even if a party is permitted to appeal a judgment within 30 days after its entry, he or she is *1145 not required to do so if the judgment does not resolve, but instead leaves for later determination, then-pending claims for reasonable attorney fees and litigation expenses. In this situation, sensibly, the party may wait and appeal after all claims are resolved and he or she knows the overall outcome of the entire case.
Neither Franz nor Wlasiuk excuses a party from timely appealing a judgment that resolves all claims and all parties then pending before the court, including all then-pending claims for fees and expenses. In other words, neither Franz and Wlasiuk excuses a party from timely appealing a judgment that leaves nothing unresolved; and if such a judgment is not timely appealed, it directly precludes all further proceedings in the same case, except proceedings to "clarify" or enforce.
The May 2000 judgment entered in this case disposed of all claims and all parties. It left nothing unresolved. It was not appealed within 30 days. Since then, it has directly precluded all further proceedings in this case, including the present appeal. As a consequence, it is not now subject to review.
We reverse the August 2001 judgment, for it is precluded by the May 2000 judgment that was not timely appealed. We decline to review or disturb the May 2000 judgment, for it precludes this appeal. Except for proceedings to enforce the May 2000 judgment, if any, we direct that no further proceedings occur under this cause number.[45] Neither party shall receive costs or fees on appeal.
HOUGHTON, J., and BRIDGEWATER, J., concur.
NOTES
[1] Clerk's Papers (CP) at 55.
[2] CP at 62.
[3] CP at 76-77.
[4] CP at 78.
[5] CP at 82.
[6] CP at 88.
[7] CP at 88.
[8] CP at 88.
[9] CP at 97.
[10] CP at 101.
[11] CP at 103.
[12] CP at 103.
[13] CP at 108-109.
[14] CP at 110-111.
[15] CP at 132.
[16] CP at 133.
[17] These provisions are not supported by the record, which contains no evidence that Fritz ever used the easement for logging trucks, dump trucks, or any other kind of heavy equipment. We do not reach Kemmer's claim to this effect because we reverse for other reasons.
[18] CP at 133-134.
[19] RAP 2.2(a)(1); RAP 2.2(d); CR 54(a); CR 54(b); Fox v. Sunmaster Prods., Inc., 115 Wash.2d 498, 503, 798 P.2d 808 (1990); Doerflinger v. New York Life Ins. Co., 88 Wash.2d 878, 880-81, 567 P.2d 230 (1977); Anderson & Middleton Lumber Co. v. Quinault Indian Nation, 79 Wash.App. 221, 224-25, 901 P.2d 1060 (1995), aff'd, 130 Wash.2d 862, 929 P.2d 379 (1996); Wlasiuk v. Whirlpool Corp., 76 Wash.App. 250, 255, 884 P.2d 13 (1994). For other orders that may be appealable, see RAP 2.2(a).
[20] Rose v. Fritz, 104 Wash.App. 116, 121, 15 P.3d 1062 (2001); Pederson v. Potter, 103 Wash.App. 62, 67, 11 P.3d 833 (2000), review denied, 143 Wash.2d 1006, 25 P.3d 1020 (2001); Nestegard v. Investment Exch. Corp., 5 Wash.App. 618, 623-24, 489 P.2d 1142 (1971).
[21] RAP 2.2(a)(1); RAP 5.2(a); Fox, 115 Wash.2d at 502, 798 P.2d 808.
[22] Rose, 104 Wash.App. at 121, 15 P.3d 1062; Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L.REV. 805, 822 (1984).
[23] Rivard v. Rivard, 75 Wash.2d 415, 418, 451 P.2d 677 (1969).
[24] RAP 7.2(c); In re Marriage of Burrill, 113 Wash.App. 863, 873, 56 P.3d 993 (2002), review denied, 67 P.3d 1096 (2003).
[25] Kelly-Hansen v. Kelly-Hansen, 87 Wash.App. 320, 329, 941 P.2d 1108 (1997); cf. Larsen v. Farmers Ins. Co., 80 Wash.App. 259, 262, 909 P.2d 935 (1996).
[26] Br. of Appellant at 38 n. 147; see also Br. of Appellant at 38 ("post-judgment motions were required to be filed with[in] 10 days of the May 31, 2000 Judgment").
[27] Br. of Appellant at 38.
[28] 75 Wash.2d 415, 451 P.2d 677 (1969).
[29] Rivard, 75 Wash.2d at 418, 451 P.2d 677 ("A clarification, on the other hand, is merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary"); see also In re Marriage of Thompson, 97 Wash.App. 873, 878, 988 P.2d 499 (1999).
[30] Rivard, 75 Wash.2d at 418, 451 P.2d 677.
[31] Br. of Resp't at 10.
[32] 119 Wash.2d 780, 836 P.2d 832 (1992).
[33] 76 Wash.App. 250, 884 P.2d 13.
[34] Snohomish County cause number XX-X-XXXXX-X, "Judgment Quieting Title," clerk's document 22, page 2, lines 11-13.
[35] Snohomish County cause number XX-X-XXXXX-X, "Supplemental Findings of Fact[,]" clerk's document 40, pages 1-2.
[36] Snohomish County cause number XX-X-XXXXX-X, "Judgment Quieting Title," clerk's document 22, page 1, lines 20-26; page 2, lines 1-7; page 3, lines 19-26. Franz's proposed judgment actually assessed damages of $29,500. This was later corrected to $29,000. Snohomish County cause number XX-X-XXXXX-X, "Stipulation Amending Judgment[,]" clerk's document 53, page 1. We use the corrected figure.
[37] Snohomish County cause number XX-X-XXXXX-X, "Judgment Quieting Title," clerk's document 22, page 1, line 26; page 2, lines 1-2, 5-7; page 3, lines 19-26.
[38] Snohomish County cause number XX-X-XXXXX-X, "Supplemental Judgment Awarding Attorney's Fees and Expenses[,]" clerk's document 47, page 2, lines 10-11.
[39] Snohomish County cause number XX-X-XXXXX-X, "Supplemental Findings of Fact[,]" clerk's document 40, page 3, line 19-20.
[40] See 119 Wash.2d at 780, 836 P.2d 832 (reporter's preface to the Supreme Court's opinion).
[41] 119 Wash.2d at 781, 836 P.2d 832.
[42] Franz, 119 Wash.2d at 781, 836 P.2d 832. On this point, Franz conflicts with and overrides the analysis of finality that the Wlasiuk court saw fit to include under the heading, "Issue One." 76 Wash.App. at 253-58, 884 P.2d 13. The Wlasiuk court recognized as much under the heading, "Issue Three." 76 Wash.App. at 259-61, 884 P.2d 13.
[43] 76 Wash.App. 250, 884 P.2d 13.
[44] 76 Wash.App. at 252, 884 P.2d 13.
[45] We have not considered RCW 8.24; thus, nothing herein either permits or prevents the use of that statute under a different cause number. We also observe (as the trial judge observed early on) that the parties remain free to agree, and that by doing that they might reach a solution more practical than the one available by law.