FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 22

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 43190-4-II |
| GWENDOLYN KASEBURG, | |
| Respondent, | |
| and | |
| JEFFREY KASEBURG, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, P.J. — The day after Jeffrey Kaseburg and Gwendolyn Bowman's April 2011 dissolution trial concluded, police seized $20,000 from Kaseburg's safe during a drug raid of his home.[1] Kaseburg told police he was hiding the money from Bowman. In addition, although the trial court awarded Bowman the family home, she later learned that it was subject to a $94,396.88 federal tax lien related to the restaurant business awarded to Kaseburg. In light of these developments, Bowman successfully moved the trial court to clarify the dissolution decree to reflect that Kaseburg should be responsible for all debts related to the restaurant and to award her the $20,000 seized by police.

---

[1] Although sometimes referred to as "Gwendolyn Kaseburg," the Respondent has indicated in her brief that she now goes by "Gwendolyn Bowman." For clarity, we refer to her as "Bowman" throughout.

Kaseburg now appeals, arguing that (1) the trial court lacked jurisdiction to address either issue without Bowman bringing a separate cause of action, or (2) the trial court abused its discretion because substantial evidence does not support its decisions on these issues.[2] We disagree. Because the trial court properly reserved ruling on the $20,000 until it was clear that the money was not subject to civil forfeiture, and Kaseburg has failed to establish that the trial court erred in awarding this money to Bowman, we affirm the trial court's ruling on this issue. And, in relation to the tax lien, the record provided does not indicate that the trial court erred in clarifying the decree, thereby awarding the tax lien to Kaseburg. Accordingly, we affirm.

FACTS

After living together for approximately seven years, Kaseburg and Bowman married on August 18, 2000. Shortly before their wedding, Kaseburg asked Bowman to sign a prenuptial agreement. The agreement listed "Mad Dogs Café and 85% of its net assets," $50,000 in cash, and substantial property as the separate property of Kaseburg. Clerk's Papers (CP) at 263. It failed to disclose "any of the approximately $692,000 in promissory notes [Kaseburg] owed his parents" and provided that Bowman would receive almost nothing in the event of divorce. CP at 342. Bowman signed the agreement.

The couple separated in 2008 and Bowman filed for divorce in 2009. The parties' dissolution proceeding began on April 21, 2011, and, after four days of testimony,[3] the trial court delivered a memorandum decision stating that (1) the prenuptial agreement was invalid, (2) the

_____

[2] Kaseburg also assigns error to the trial court's denial of his motion for reconsideration in his brief. However, he has failed to provide any argument supporting this assignment of error. Accordingly, we refrain from addressing this issue. RAP 10.3(a)(6); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998).

[3] Kaseburg failed to designate any of this testimony for appellate review.

parties had a meretricious relationship from 1993 until the date of their marriage, and (3) "the husband should be awarded the restaurant business and . . . the wife should be awarded the [Buckley] home and property subject to the mortgage." CP at 322. Neither party has appealed this decision.

The day after the dissolution proceeding ended, police seized $20,000 from Kaseburg's safe during a drug raid of the Buckley home.[4] According to the probable cause determination, "[o]fficers also found $20,000 in his safe, which he claimed he [was] hiding from his ex-wife." CP at 71. After learning of Kaseburg's arrest and his statement to police, Bowman moved the trial court to award her the $20,000. Kaseburg opposed the motion, arguing that the trial court should reserve ruling on that issue as the $20,000 was potentially subject to civil forfeiture. The trial court agreed with Kaseburg and shortly thereafter issued its dissolution decree. The decree repeated much of what was contained in the court's memorandum decision but, in addition, specifically noted that Bowman should refinance the Buckley home within approximately 90 days.

While attempting to secure refinancing for the Buckley home, Bowman discovered that the Internal Revenue Service (IRS) had burdened it with a $94,396.88 tax lien related to unpaid payroll taxes for the restaurant. Because of this, Bowman moved the trial court in November 2011 for (1) release of the $20,000 held by the Pierce County Sheriff's Department and (2) clarification of the dissolution decree. More specifically, Bowman requested that the decree "be clarified indicating that Mr. Kaseburg is responsible for any and all taxes including employee

---

[4] The record indicates that the prosecuting attorney intended on charging Kaseburg with unlawful possession of marijuana with intent to deliver and potential enhancements related to firearms. Kaseburg stated during a later motion in the dissolution proceedings that he pleaded to a misdemeanor, although no further information is available.

[quarterly payroll] taxes, income taxes, corporate taxes, and all other forms of taxes on the business." CP at 74.

Kaseburg opposed the motion, again arguing that the trial court should reserve ruling on the issue until it became clear whether the $20,000 seized by police would be subject to civil forfeiture proceedings. Kaseburg also argued (seemingly for the first time in these proceedings) that Bowman ran the diner under a separate business entity, GEF Enterprises, LLC, for approximately two years.[5] Kaseburg contended that the name stood for "Gwens Entrepreneurial Future Enterprises, LLC," that the tax lien related solely to that entity, and that Bowman should be entirely responsible for disposing of that debt. CP at 83. On December 16, 2011, the trial court ruled that it would reserve ruling on both issues "until further information is presented concerning details of said [tax] lien." CP at 136.

In February 2012, Bowman again moved the court to release the $20,000 to her and clarify the dissolution decree. At the motion hearing, Bowman argued that Kaseburg had testified repeatedly at trial that he did not have any money, was living off his parents, and that the hidden money was "yet another example of [Kaseburg's] deliberate and willful attempt to deceive this Court." Report of Proceedings (RP) (Feb. 10, 2012) at 4. Kaseburg argued that the court had specifically found that he had $382,000 from the sale of property and, in result, "that he would have $20,000 in his safe makes perfect sense." RP (Feb. 10, 2012) at 7. Kaseburg also argued that he had recently sold a number of items, including a snow mobile and tractor, which further explained the large quantity of cash in the safe. The trial court, however, noted that there

---

[5] Bowman filed a declaration in response, arguing that Kaseburg's allegations about GEF Enterprises were "an outrageous lie." CP at 149. At the motion hearing, Bowman argued that "[t]o stand before this Court and now say, [Kaseburg] didn't own GEF Enterprises, flies in the face of days of testimony in this case." Report of Proceedings (RP) (Feb. 10, 2012) at 8.

was "no testimony with regard to the $20,000 that [Kaseburg] had cash stashed in the home at the time of trial." RP (Feb. 10, 2012) at 9.

In relation to the tax issue, Bowman argued,

> You've heard this argument. You've heard the testimony. I'm not going to spend a whole lot of time repeating what you already know. But clearly it was Mr. Kaseburg's testimony that he owned Mad Dog's Diner and the multiple organizations and LLC's and business creations which operated Mad Dog's Diner. At no point was my client an owner of any of those enterprises, whether it was Mad Dog's Diner, GEF Enterprises, Doggie Style Enterprises or anything else. And, in fact, his whole position at trial is [Bowman] had no interest in any of these businesses' creations.
> On February 10, 2006, you know, clearly, we had testimony in the form of representation to the Liquor Control Board. That was evidence at trial. He acknowledged that he owned Mad Dog's Family Diner, GEF Enterprises, LLC, of which [he] closed.[6] And then informs them that he has the new company, Doggie Style Enterprises.
> This is an issue and an important one, because I believe, and I truly believe, that if there was any testimony that was credible of Mr. Kaseburg during the trial, the Court obviously gave him the benefit of the doubt when he testified there was no tax indebtedness. You relied upon the fact and it was your intent, and I think very clearly your intent, to award Gwen [Bowman] the family home, subject to the underlying mortgage, and this is all. And then when we have possession of the home and [Bowman] then tries to refinance, she finds out she can't refinance because of this tax lien, of which no one knew about despite the fact that it was filed in April of 2010, and which Mr. Kaseburg testified did not exist.
> So I'm simply asking that we enter an order clarifying the decree that [Kaseburg] is responsible for the indebtedness, all indebtedness on GEF Enterprises.

RP (Feb. 10, 2012) at 2-3.

Kaseburg argued that "it's clear that the sole owner of GEF enterprises was Gwen [Bowman]" because the trial court's findings of fact from the dissolution proceeding state that

---

[6] In a June 2004 letter to the Liquor Control Board, Kaseburg represented that he was "the only person of interest of the old Mad Dog's Café Inc." and assigned "all the business property to GEF Enterprises LLC." CP at 401. In February 2006, Kaseburg again wrote the Liquor Control Board assigning "all the business assets from GEF Enterprises to Doggie Style Enterprises L.L.C." CP at 389.

Bowman managed the restaurant 12 hours a day. RP (Feb. 10, 2012) at 4. Kaseburg also argued that he "cannot go out and personally resolve this lien. . . . The only person who can do this is [Bowman]. And this is not a personal liability. It's a liability of the LLC and can go away if she would take some action to do that." RP (Feb. 10, 2012) at 5.

After the conclusion of both parties' arguments, the trial court ruled in favor of Bowman:

> I will be granting the request of the petitioner with regard to the tax lien and the $20,000 cash taken from the sheriff in this regard. I am concerned because the testimony at trial did not present any testimony that GEF Enterprises was solely owned by [Bowman]. And it would appear that the tax lien references her as GEF Enterprises, care of Gwen Kaseburg. So that's not dispositive at this point.

RP (Feb. 10, 2012) at 10-11. Kaseburg interjected at that point, arguing that some evidence supported a finding that Bowman was "the sole member of that corporation" and that she ran the business during the years the tax problems began. RP (Feb. 10, 2012) at 11. The trial court, however, responded by stating, "[I]t's my understanding from the other testimony that it was not an issue then [at trial], it was her business, it was her enterprise, solely owned by her, or I'm sure you would have brought that up at the time." RP (Feb. 10, 2012) at 11. The trial court then entered an order clarifying that Kaseburg would be responsible for all restaurant-related debt, especially the debts of GEF Enterprises, LLC. The court also awarded Bowman the $20,000.

A week later, Kaseburg moved for reconsideration of the court's decision. He argued, inter alia, that the trial court erred in not dismissing the motions because "the motions dealt with undisposed property and debt [and an] independent action was required," that "a formal hearing, with testimony was required to address the issues before the Court," and that the court abused its discretion in awarding the $20,000 to Bowman and requiring Kaseburg to assume the IRS debt. CP at 155. After hearing argument from both parties on the motion, the trial court denied the reconsideration request:

> The Court does have a right to rely on the testimony of Mr. Kaseburg [from trial]. His testimony was clear with regard to these issues of ownership, as well as [there] not being any tax liability. So it was an easy matter to make a ruling in this regard granting the clarification and denying reconsideration.

RP (March 9, 2012) at 13.

Kaseburg now appeals. He argues that the trial court lacked jurisdiction to dispose of the $20,000 and the tax liability or, alternatively, that the trial court abused its discretion in ruling as it did without an adequate factual basis.

## DISCUSSION

SEIZED MONEY

Kaseburg argues that the trial court lacked jurisdiction to dispose of the money seized by police in a posttrial decree or, alternatively, that the trial court abused its discretion in awarding the funds to Bowman. Neither argument is persuasive. Accordingly, we affirm the trial court's ruling awarding the money to Bowman.

A.    JURISDICTION

Kaseburg argues that the trial court lacked jurisdiction to dispose of the $20,000 seized by police after it had already entered its dissolution decree. Because RCW 26.09.080 expressly authorizes the trial court, after it has entered a dissolution decree, to dispose of additional property it was aware of but lacked jurisdiction to address, we disagree.

"Whether a particular court has jurisdiction is a question of law reviewed de novo." *Young v. Clark*, 149 Wn.2d 130, 132, 65 P.3d 1192 (2003). Generally, "[a] party to a marriage dissolution has the right to have his interest in the property of the parties definitely and finally determined in the decree which dissolves the marriage." *In re Marriage of Little*, 96 Wn.2d 183, 194, 634 P.2d 498 (1981). However, RCW 26.09.080 expressly authorizes a trial court to "make

such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable" in a "proceeding for disposition of property following dissolution of the marriage . . . by a court which . . . lacked jurisdiction to dispose of the property" at the time it entered a dissolution decree. As Division Three of this court has stated,

> By explicitly authorizing a trial court to conduct a second-stage proceeding dividing property where jurisdiction was lacking at the time of trial, the statute [RCW 26.09.080] implicitly authorizes bifurcation. When a court lacks jurisdiction to dispose of property at the time of the dissolution trial, it may dissolve the legal status of the marriage while deferring those issues over which the court does not have jurisdiction.

*In re Marriage of Vigil*, 162 Wn. App. 242, 249, 255 P.3d 850, *review denied*, 173 Wn.2d 1005 (2011).

Here, the $20,000 seized by police was potentially subject to civil forfeiture at the time the trial court entered the dissolution decree. RCW 10.105.010, concerning property involved with commission of a felony, and RCW 69.50.505, concerning property involved in a violation of the Uniform Controlled Substances Act, ch. 69.50 RCW, both require forfeiture hearings before a law enforcement officer or administrative law judge, or removal to a court of competent jurisdiction, before the property may be released to any interested party. Thus, when Bowman first moved to have the trial court award her the $20,000 (prior to entry of the dissolution decree), the court lacked jurisdiction to dispose of the money and appropriately reserved ruling on this issue.

Later, after the police released the seized money to the trial court, it attained jurisdiction to dispose of the funds under RCW 26.09.080. *In re Marriage of Farmer*, 172 Wn.2d 616, 625, 259 P.3d 256 (2011) ("With its equitable authority invoked [under RCW 26.09.080], the court retains jurisdiction over all issues related to the decree of dissolution to ensure justice is

administered properly. . . . The court's continuing equitable jurisdiction includes the ability to grant whatever relief the facts warrant."). Accordingly, Kaseburg's contention that the trial court lacked jurisdiction to dispose of the $20,000 after it entered the dissolution decree lacks merit.[7]

## B. AWARDING SEIZED FUNDS TO BOWMAN

Kaseburg argues that the trial court abused its discretion in awarding the $20,000 to Bowman because it ignored its own findings of fact incorporated in the dissolution decree and other evidence presented that offered an innocent explanation of the origins of the $20,000. Because nothing in the record suggests that the trial court ignored its own findings and, further, the record reflects that Kaseburg attempted to conceal this money from Bowman and the court, we disagree.

"Under RCW 26.09.080 trial courts have broad discretion in the distribution of property. . . . The trial court is in the best position to assess the assets and liabilities of the parties and determine what is 'fair, just and equitable under all the circumstances.'" *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977). "The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Thus, we affirm the trial court's decision "unless no reasonable judge would have reached the same conclusion." *Landry*, 103 Wn.2d at 809-10.

---

[7] Kaseburg relies on *Hanson v. Hanson*, 55 Wn.2d 884, 887, 350 P.2d 859 (1960), for the proposition that a trial court "cannot change the terms of [a] divorce decree" as its "jurisdiction extends only to [its] enforcement." But this statement involved interpretation of former RCW 26.08.110 (1949), which was repealed in 1973. RCW 26.09.080 unequivocally contemplates "a proceeding for disposition of property following dissolution of the marriage."

In addition, when it appears that one party has concealed assets, the trial court has "a right to take that factor into consideration in dividing the property." *In re Marriage of Nicholson*, 17 Wn. App. 110, 118, 561 P.2d 1116 (1977). As the Washington Supreme Court has stated,

> It was the duty of appellant to make a full and fair disclosure of all property, both separate and community, as he had its management and control. The court was not satisfied that he had done so. In such a situation, appellant must not be surprised if the courts take that fact into consideration in making an equitable distribution of property.

*Rentel v. Rentel*, 39 Wn.2d 729, 736, 238 P.2d 389 (1951).

Here, it is undisputed that Kaseburg submitted a financial declaration to the trial court just before the dissolution trial began in April 2011 indicating that he had no cash on hand. In addition, the prosecuting attorney's declaration for determination of probable cause (related to the incident that occurred the day after the dissolution trial ended) states that "[o]fficers also found $20,000 in [Kaseburg's] safe, which he claimed he [was] hiding from his ex-wife." CP at 71.

Kaseburg submitted information attempting to explain away these inconsistencies after Bowman and the court learned of the $20,000. For instance, he argued in a declaration that the statement to police "was twisted around," that he received large sums of cash for selling various items (a snowmobile and a dump truck) during the course of the dissolution trial, and that his girlfriend was storing large sums of money in his home safes. CP at 78. In addition, Kaseburg argued that because the trial court's findings of fact state that he kept most of the proceeds from a 2006 sale of land netting him approximately $382,000, "the fact that he would have $20,000 in his safe makes perfect sense." RP (Feb. 10, 2012) at 7.

But Kaseburg fails to explain how any reasonable judge weighing such competing evidence *must* have decided in his favor, as the appellate standard of review requires. *Landry*, 103 Wn.2d at 809-10. Here, the trial court was clearly concerned about the adequacy of Kaseburg's explanations for the money. On the day it awarded the money to Bowman, it asked Kaseburg whether there was any "testimony with regard to the $20,000 that he had . . . stashed in the home at the time of trial."[8] RP (Feb. 10, 2012) at 9. In addition, Kaseburg failed to explain why he would have saved large sums of cash from a sale of land made five years before (or why he omitted it on his pretrial financial declaration) or why he sold his snowmobile or dump truck for cash.

On appeal, Kaseburg has "the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *Landry*, 103 Wn.2d at 809. Because Kaseburg has failed to meet this burden, we conclude that the trial court did not abuse its discretion in awarding the $20,000 to Bowman.

GEF ENTERPRISES TAX LIEN

Kaseburg next argues that the trial court lacked jurisdiction to dispose of the federal tax lien against GEF Enterprises or, alternatively, that the trial court abused its discretion in awarding the debt to him. Based on the limited record submitted for our review, it appears the trial court properly awarded the debt to Kaseburg as part of a modification of the dissolution decree. Accordingly, we conclude that the trial court had jurisdiction to dispose of the federal tax lien and, in doing so, did not abuse its discretion in awarding the debt to Kaseburg.

---

[8] Kaseburg admitted that there was not.

11

A.    CLARIFICATION OF THE DECREE

Kaseburg argues that the trial court improperly modified the dissolution decree because an independent action must be filed to dispose of liabilities that have not been previously disposed of in a dissolution decree. Because the trial court properly clarified its previous ruling related to the parties' respective debts, we disagree.

"A trial court does not have the authority to modify even its own decree in the absence of conditions justifying the reopening of the judgment." *In re Marriage of Thompson*, 97 Wn. App. 873, 878, 988 P.2d 499 (1999) (citing RCW 26.09.170(1)). However, an ambiguous decree may be clarified. *Thompson*, 97 Wn. App. at 878. Whether a dissolution decree is ambiguous is a question of law subject to de novo review, *In re Chavez*, 80 Wn. App. 432, 435, 909 P.2d 314, *review denied*, 129 Wn.2d 1016 (1996), and "[u]nlike a modification, amendment, or alteration, which must be accomplished under CR 59, CR 60 or some other exception to preclusion, a 'clarification' can be accomplished at any time." *Kemmer v. Keiski*, 116 Wn. App. 924, 933, 68 P.3d 1138 (2003). To be ambiguous, a decree must be "fairly susceptible to two different, reasonable interpretations." *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 493-94, 116 P.3d 409 (2005).

Here, the dissolution decree awarded the restaurant business to Kaseburg. As Bowman argues,

> [I]t is reasonable to infer that Mr. Kaseburg was also to be responsible for all debts associated with the restaurant, including unpaid payroll taxes due, if any. [However,] since the Decree specifically mentions certain debts associated with the restaurant (and assigns them to Mr. Kaseburg), but does not mention any unpaid taxes, it is also reasonable to infer that the Decree embodies no intention regarding that debt. CP 67. The Decree is susceptible to two different reasonable interpretations, and hence is ambiguous.

Br. of Resp't at 20.

We agree with Bowman's argument concerning the ambiguity of the decree: at the time the trial court issued the dissolution decree, it clearly intended on disposing of all the parties' assets and debts apart from the $20,000 seized by police. Accordingly, the trial court properly undertook clarification of the decree, effectively defining rights it had already granted. *See Rivard v. Rivard*, 75 Wn.2d 415, 418, 451 P.2d 677 (1969) (A modification occurs when "rights given to one of the parties [are] either extended beyond the scope originally intended or where those rights are reduced, giving the party less rights than those he originally received. A clarification, on the other hand, is merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary.").

B.    AWARDING THE DEBT TO KASEBURG

Kaseburg argues that the trial court abused its discretion in awarding him the payroll tax debt because it failed to "set forth the existence or non-existence of determinative factual matters, based upon the evidence provided to the Court." Br. of Appellant at 22. Although the record designated for our review is sparse, we disagree.[9]

Where a dissolution decree is ambiguous, "a reviewing court seeks to ascertain the intention of the court entering the original decree by using general rules of construction applicable to statutes, contracts and other writings." *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). This is "not a question of fact, but is a question of law for this court" to decide de novo. *Leavy, Taber, Schultz & Bergdahl v. Metro. Life Ins. Co.*, 20 Wn. App. 503, 504, 581 P.2d 167 (1978). Accordingly, we must determine (based on the limited evidence

---

[9] Although we address this issue on the merits, we note that the appellant bears the burden of providing an adequate record for our review. *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988); RAP 9.2(b), 9.6(a). If an appellant fails to satisfy this burden, "the trial court's decision . . . must stand." *Story*, 52 Wn. App. at 345.

before us) whether the trial court intended on awarding all business related liabilities to Kaseburg when it originally divided the parties' assets and debts.

Here, the trial court listened to extensive testimony concerning the parties' assets and liabilities prior to entering its decree of dissolution. And although Kaseburg has failed to designate any of that testimony for review, it is clear from the record that (1) prior to posttrial motions (when it became clear that there was an outstanding debt for nearly $100,000 related to the restaurant), Kaseburg consistently argued that he was the sole (or majority) owner of the restaurant; and (2) the potential issue of outstanding payroll taxes was presented to the court at trial.

At the dissolution trial, Kaseburg argued that the prenuptial agreement should be upheld because Bowman had contributed "no financial or labor contribution of any kind" to Mad Dog's Diner. CP at 292. Tax returns from 2003 to 2005 showed that while the parties filed joint 1040 tax returns, Kaseburg listed himself as the sole proprietor of the restaurant on the form's Schedule C during those years. In addition, Kaseburg wrote the Washington State Liquor Control Board in 2004, stating, "I Jeff Kaseburg being the only person of interest of the old Mad Dog's Café Inc. do hereby assign all the business property to GEF Enterprises LLC." CP at 401. And early in 2006, again wrote the Liquor Control Board stating,

> I own Mad Dog's Family Diner (G.E.F. Enterprises L.L.C.) Of which I closed. I have a new company called Doggie Style Enterprises L.L.C. Which is DBA. As the Mad Dogs Diner & Pub. I here-by assign all the business assets from GEF Enterprises to Doggie Style Enterprises L.L.C.

CP at 389. In a 2009 declaration, Kaseburg maintained that "Mad Dogs Diner is my separate property." CP at 266. Additionally, Kaseburg testified at trial that all payroll taxes had been

14

paid and the trial court admitted exhibit 85, a document related to the outstanding payroll tax debt.

Although the original dissolution decree did not expressly mention any tax debts, the record indicates that the trial court attempted to ascertain and dispose of any such debts during the course of the trial. Accordingly, when it became clear that an outstanding restaurant-related debt discussed at trial had been overlooked in the decree, the trial court did not abuse its discretion in clarifying the dissolution decree and explicitly "spell[ing] out" that the debt obligation should belong to Kaseburg.[10] *Rivard*, 75 Wn.2d at 418.

ATTORNEY FEES

Kaseburg argues that pursuant to RCW 26.09.140, he is entitled to attorney fees on appeal. But Kaseburg misinterprets this attorney fee provision. RCW 26.09.140, unique to dissolution proceedings, allows this court the discretion, "after considering the financial resources of both parties," to award reasonable fees or costs to a party—irrespective of which party has prevailed on appeal. Kaseburg has provided no evidence that Bowman stands in a better financial position than he does to pay for the costs of his appellate proceeding. Further, Kaseburg has failed to file an affidavit of financial need as required by RAP 18.1(c). Accordingly, we deny Kaseburg's request for appellate attorney fees.

The trial court properly reserved ruling on the $20,000 until it was clear that the money was not subject to forfeiture, Kaseburg has failed to establish that the trial court erred in

---

[10] As previously noted, after denying Kaseburg's motion for reconsideration related to the tax debt, the court stated,

> The Court does have a right to rely on the testimony of Mr. Kaseburg. His testimony [at trial] was clear with regard to these issues of ownership, as well as [there] not being any tax liability. So it was an easy matter to make a ruling in this regard granting the clarification and denying reconsideration.

RP (March 9, 2012) at 13.

No. 43190-4-II

awarding this money to Bowman, the record provided does not indicate that the trial court erred in clarifying the dissolution decree to dispose of the payroll tax debt, or in awarding the tax lien to Kaseburg. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, P.J.

We concur:

PENOYAR, J.

MAXA, J.

16