522

[Nos. 64595-1-I; 66050-1-I;     Division One.     April 2, 2012.]
66051-9-I.

GARY F. KARLBERG ET AL., *Respondents*, v. STEVEN L. OTTEN, *Appellant*.

STEVEN L. OTTEN, *Appellant*, v. GARY F. KARLBERG ET AL., *Respondents*.

*Richard A. Davis III* and *Seth A. Woolson* (of *Chmelik, Sitkin & Davis*), for appellant.

*John C. Belcher* (of *Belcher Swanson Law Firm PLLC*), for respondents.

¶1 BECKER, J. — This appeal arises from two successive judgments quieting title. In his first action, plaintiff Gary Karlberg sought and obtained a judgment placing the new boundary line between his property and defendant Steven Otten's about halfway between the surveyed line and an old fence. In his second action, he sought and obtained a judgment establishing the fence as the boundary line. Concluding that res judicata barred the splitting of the claim, we reverse the second judgment and leave the boundary line as established by the first judgment.

## FACTS

¶2 According to unchallenged findings of fact entered after the first trial, the old fence in question was recognized from at least the early 1940s as the boundary between two neighboring properties in the countryside near Bellingham.[1] Respondent Gary Karlberg bought the western property in 1975. He constructed a shop building about 80 feet west of the fence.

¶3 A survey done in 1994 at the request of the owners of the eastern property showed the property line between the two properties was actually 82 feet west of the fence. It ran through Karlberg's shop and cut across the driveway leading to the shop.

¶4 Appellant Steven Otten became the owner of the eastern property in 1996. A few incidents of conflict were reported to the sheriff at this time as a result of some

---

[1] Appellant Steven Otten assigns error to various findings of fact. Because he does not attempt to show that any of the findings to which he has assigned error are not supported by substantial evidence, all of the findings are regarded as verities on appeal. *See In re Estate of Lint*, 135 Wn.2d 518, 531-32, 957 P.2d 755 (1998) ("It is incumbent on counsel to present the court with argument as to why specific findings of the trial court are not supported by the evidence and to cite to the record to support that argument.").

efforts by Otten to interfere with Karlberg's use of the land between the survey line and the fence.

¶5 Beginning in 2003, Otten renewed his challenge to Karlberg's occupancy of the land east of the survey line. He moved junk cars onto it and painted rings around the trees. One year, Otten strung barbed wire along part of the surveyed line behind the shop. In January 2008, he cut down an ornamental tree next to the paved driveway and removed a gatepost, damaging the driveway.

¶6 Karlberg sued Otten in February 2008, seeking to quiet title to a 45 foot wide strip east of the surveyed line—in other words, to establish the boundary about halfway to the fence.[2] He alleged that he had acquired title to the strip by adverse possession, mutual recognition, or acquiescence and had continually used and maintained it. He referred to the 45 foot strip as "the Disputed Area." He particularly alleged, "The true eastern boundary of the Karlberg parcel is located 45' to the east of the 1994 survey line."[3] Otten answered by denying most allegations. By way of affirmative defense, he asserted the survey line as the boundary, alleged that Karlberg's occupation was permissive, and denied that Karlberg had ever maintained or improved the area up to the fence. Otten added a counterclaim for trespass damages and sought an injunction to compel removal of Karlberg's encroachments.[4]

¶7 Before trial, Otten moved to amend his answer to add a counterclaim for adverse possession. The trial court denied the motion. On October 23, 2009, Otten filed a separate quiet title action against Karlberg.[5]

---

[2] Whatcom County Superior Court Cause No. 08-2-00445-3; Clerk's Papers at 318-27 (Compl.).

[3] Clerk's Papers at 323.

[4] Clerk's Papers at 312-17.

[5] Whatcom County Superior Court Cause No. 09-2-02890-3; Clerk's Papers at 344-47 (Compl.).

¶8 After a four day bench trial, the court ruled that the facts proved by Karlberg showed that he had acquired title all the way up to the fence either through mutual recognition and acquiescence and adverse possession by his predecessors in title or through his own adverse possession from 1975 to 1994.[6] But Karlberg's complaint had asked to quiet title only to the western 45 feet, the strip referred to by Karlberg as "the Disputed Area." Accordingly, the court concluded that Karlberg's title should be quieted only in that portion. Conclusion of law 6 states, "Plaintiffs' east boundary is the Fence. However, since plaintiffs' complaint prays only to quiet title to the 45' strip east of the surveyed line, title should be quieted to only this area."[7] Judgment was entered in the first lawsuit on November 20, 2009, quieting title in Karlberg to the western 45 foot strip and ejecting Otten from it.

¶9 On December 29, 2009, Karlberg filed another quiet title action against Otten.[8] He alleged that Otten had now moved the junk cars farther east, so they were not on the 45 foot strip that had just been awarded to Karlberg but were still west of the fence. In this action, Karlberg sought to quiet title to the remaining area between the 45 foot strip and the fence and to eject Otten and his cars from that area as well.

¶10 Both parties moved for summary judgment in the two pending cases. Karlberg's position was that the findings and conclusions in the first action preclusively established his title up to the fence. Otten's position was that the judgment in the first action precluded Karlberg from moving the boundary again, but that Otten's case should proceed because it concerned property west of the survey line that was not discussed in the first action. On August

---

[6] Clerk's Papers at 282-83 (Conclusions of Law 2-5).

[7] Clerk's Papers at 12 (Conclusion of Law 6).

[8] Whatcom County Superior Court Cause No. 09-2-03432-6; Clerk's Papers at 363-69 (Compl.).

13, 2010, the trial court granted Karlberg's motion. Title was quieted in Karlberg to the area west of the fence, and the legal descriptions for the Karlberg and Otten properties were modified to show the fence as the new boundary line. The court issued a separate order dismissing Otten's complaint.[9]

¶11 Otten appeals from both judgments for Karlberg. He also appeals the dismissal of his own lawsuit.

## OTTEN'S CHALLENGE TO KARLBERG'S FIRST JUDGMENT

¶12 Otten moved to amend his answer to Karlberg's first lawsuit by adding a counterclaim to the effect that if the area up to the fence had ever become part of the Karlberg property by adverse possession, then Otten had reacquired it, except for the area immediately surrounding the shop building, by his own adverse possession for more than 10 years. The trial court denied the motion to amend. Otten assigns error to this ruling. He contends the judgment must be reversed and a new trial granted in which his own claim of adverse possession can be considered along with Karlberg's.

¶13 In answer to Karlberg's complaint of February 2008, Otten alleged that the surveyed line, not the fence, was the true boundary. He claimed that his predecessors in title had granted permission to Karlberg to leave his shop building where it stood, that they had never recognized the fence as the boundary, and that his own haying activities in the area west of the fence had prevented Karlberg from establishing continuous and exclusive use of that land. He counterclaimed against Karlberg for ejectment and trespass damages. He did not explicitly allege that his own title had been acquired through adverse possession.

¶14 On June 2, 2008, the trial court set discovery deadlines. The discovery cutoff date was 30 days before trial.

---

[9] Clerk's Papers at 334-35.

Trial was set for November 4, 2008, making the discovery cutoff October 5, 2008. The order stated that if the trial date was continued, deadlines related to the original trial date would remain unchanged.

¶15 After two continuances, the trial was rescheduled for October 27, 2009.

¶16 On October 1, 2009, Otten filed the motion to amend his answer to add a counterclaim of adverse possession. Karlberg objected that the discovery deadline had passed and the case had already been continued twice. Otten replied there was no prejudice because no new witnesses would need to be called and the facts supporting his own claim of adverse possession would be the same as those he was relying on to defeat Karlberg's claim of adverse possession. The court denied the motion on October 16, 2009.

¶17 Leave to amend is to be "freely given when justice so requires." CR 15(a). We review a trial court's denial of a motion to amend for an abuse of discretion. The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party. *Donald B. Murphy Contractors, Inc. v. King County*, 112 Wn. App. 192, 199, 49 P.3d 912 (2002). In determining whether prejudice would result, a court can consider potential delay, unfair surprise, or the introduction of remote issues. *Kirkham v. Smith*, 106 Wn. App. 177, 181, 23 P.3d 10 (2001).

¶18 Where a new claim can be litigated with the same evidence that is already in the case, it may be proper for a trial court to allow an amendment even when the motion to amend is made shortly before trial. In *Kirkham*, for example, the defendant moved to add a counterclaim three weeks before trial for violation of a statute. *Kirkham*, 106 Wn. App. at 180. Concluding that the counterclaim required essentially the same proof as the allegations in an existing counterclaim for misrepresentation, the trial court determined there was no prejudice and allowed the amendment. We upheld the decision to allow the amendment as a

proper exercise of the trial court's discretion. *Kirkham,* 106 Wn. App. at 181.

¶19 Unlike in *Kirkham,* Otten's proposed counterclaim could not fairly be litigated using only the evidence pertaining to the claims already in the case. Karlberg was prepared to prove he had acquired title to the 45 foot strip by continuous and exclusive use over many years before 1994. Otten was now proposing to argue that if so, Otten had repossessed it by his own continuous and exclusive activities after 1994. Otten's theory was new. To defend against it, Karlberg would have to focus on Otten's activities after 1994. With only two weeks remaining before trial and no time for another round of discovery, it was unfair to put Karlberg in this position. Thus, Otten's motion to amend was untimely. We conclude the trial court did not abuse its discretion by denying the motion to amend.

¶20 Alternatively, Otten argues that the motion to amend should have been granted because his counterclaim of adverse possession, while not explicitly raised in the pleadings, was tried with the implicit consent of the parties. He emphasizes that it was undisputed at trial that from 2000 to 2008, he paid taxes on the disputed strip and used it as a true owner would by activities such as staking, fencing, clearing, and storing property upon it.

¶21 When issues that are not raised by the pleadings are tried by express or implied consent of the parties, they will be treated in all respects as if they had been raised in the pleadings. CR 15(b); *Dewey v. Tacoma Sch. Dist. No. 10,* 95 Wn. App. 18, 26, 974 P.2d 847 (1999). On the other hand, a party who does not plead a cause of action or theory of recovery "cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." *Dewey,* 95 Wn. App. at 26. In determining whether the parties impliedly tried an issue, the appellate court will consider the record as a whole, including whether the issue was mentioned before the trial and in opening arguments, the evidence on the issue

admitted at trial, and the legal and factual support for the trial court's conclusions regarding the issue. *Dewey*, 95 Wn. App. at 26.

¶22 It is true that the court admitted evidence in the first trial that would have been relevant to an adverse possession claim by Otten, including Otten's tax records. *See* RCW 7.28.070. But the tax records were admitted over Karlberg's objection that they were irrelevant[10] and Otten did not attempt to justify them on the basis that they were relevant to his own claim. The admission of evidence concerning Otten's activities on the land did not signify Karlberg's acquiescence to Otten's pursuit of an unpleaded counterclaim of adverse possession, as such evidence was also relevant to Otten's defense that his activities interrupted the continuity of Karlberg's possession. Counsel for Karlberg stated in closing argument that Karlberg had not consented to trial of an adverse possession claim by Otten.[11] On this record, Otten does not demonstrate that his proposed counterclaim was tried by implied consent.

¶23 Otten next contends his original answer stated a claim of adverse possession by generally alleging ownership of the disputed strip and the trial court erred by refusing to consider it. According to Otten, an allegation of ownership in fee entitles a litigant to introduce proof of any title, including that acquired by adverse possession. We will not discuss this argument or consider the authorities Otten cites in support of it. Otten did not make this argument below. A failure to preserve a claim of error by presenting it first to the trial court generally means the issue is waived. *See Bellevue Sch. Dist. No. 405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967); RAP 2.5(a). While an appellate court retains the discretion to consider an issue raised for the first time on appeal, such discretion is rarely exercised. *Smith v. Shannon*, 100 Wn.2d 26, 38, 666 P.2d 351 (1983).

---

[10] Report of Proceedings at 493.

[11] Report of Proceedings at 550.

Here, it would be unfair to Karlberg to reverse the first judgment and remand for a new trial to allow Otten to present a claim of adverse possession he did not squarely present the first time around.

¶24 Otten's challenge to the first judgment in favor of Karlberg (November 20, 2009) fails. That judgment will be affirmed.

## OTTEN'S CHALLENGE TO KARLBERG'S SECOND JUDGMENT

¶25 Karlberg's second quiet title action, filed on December 29, 2009, claimed ownership all the way up to the fence. On August 13, 2010, the trial court granted Karlberg's motion for summary judgment based on the findings and conclusions entered on November 20, 2009, in Karlberg's previous action. Otten contends the 2009 judgment is res judicata as to the boundary line defined in Karlberg's second suit and that the judgment of August 13, 2010, must be reversed because it does not limit Karlberg to the 45 foot strip he was awarded in the first judgment.

¶26 As a preliminary matter, Karlberg contends that Otten waived the defense of res judicata. The defense of res judicata can be waived if the defendant is aware of a second suit for the same cause of action. *Brice v. Starr*, 93 Wash. 501, 504-05, 161 P. 347 (1916); *Landry v. Luscher*, 95 Wn. App. 779, 786, 976 P.2d 1274, *review denied*, 139 Wn.2d 1006 (1999); RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982). But here, Karlberg's second suit came after judgment was granted in the first case. Because Karlberg's two suits were not pending at the same time, this exception does not apply. *Landry*, 95 Wn. App. at 786-87.

¶27 Res judicata does not apply to issues reserved from adjudication. *Cummings v. Guardianship Servs. of Seattle*, 128 Wn. App. 742, 754, 110 P.3d 796 (2005), *review denied*, 157 Wn.2d 1006 (2006); RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(b). Karlberg contends the trial court

"reserved" the issue concerning the rest of the property up to fence. The record does not support this argument. There was no discussion of any issue being reserved. The issue of ownership up to the fence was fully heard. We will proceed to reach the merits of Otten's res judicata defense.

¶28 Karlberg's first complaint[12] alleged that the true eastern boundary of his parcel was 45 feet to the east of the 1994 survey line. The 45 foot strip was the area that Karlberg claimed he had long been "maintaining."[13] But Karlberg's trial memorandum described the fence, 82 feet to the east of the survey line, as the recognized boundary between the Karlberg and Otten properties.[14] Counsel for Karlberg explained at the beginning of the trial that the objective was to obtain only 45 feet:

> COUNSEL: All we are moving in this case to do is to quiet title to this 45 feet. And there is no law that says we have to sue for everything we own. I mean, if a personal injury litigant wants to waive damages over 50 thousand and go to district court or mandatory arbitration, they have a right to do that. . . .
>
> . . . .
>
> THE COURT: You are not moving to quiet title to the whole strip or up to the former fence line?
>
> COUNSEL: We are not. In the Complaint we just plead to the 45 feet.[15]

In explaining why he did not seek to obtain a judgment for the entire 82 feet up to the fence, Karlberg alluded briefly to "peace in the neighborhood" and "historical reasons."[16]

¶29 At the time judgment was rendered, Karlberg again addressed the discrepancy by saying that the *findings*

---

[12] Whatcom County Superior Court Cause No. 08-2-00445-3, filed on February 25, 2008.

[13] Clerk's Papers at 523 (Karlberg's declaration in support of motion for a preliminary injunction, filed February 25, 2008).

[14] Clerk's Papers at 421-22.

[15] Report of Proceedings at 9-10 (Oct. 27, 2009).

[16] Report of Proceedings at 9, 11 Oct. 27, 2009).

should "hold that the title to the property actually goes to the fence line" but the *relief granted* should be to quiet title only to the first 45 feet because that was all the complaint asked for.[17] The trial judge, though puzzled by Karlberg's request for less than he was entitled to, did as requested:

> THE COURT: I believe that the, under the facts presented the law requires that title be quieted to the plaintiffs as per I believe it was Exhibit No. 27. But the Findings as [counsel for Karlberg] points out, I think the Findings should directly reflect the — Findings of Fact should reflect that the title passed to, up to the fence line but we are only quieting title, for reasons I do not yet understand, maybe never will, but the request is to quiet title up to that which is set forth in Exhibit No. 27 [Plaintiff's Exhibit, a survey depicting a "Quiet Title Strip" 45 feet wide].[18]

The court entered findings of fact supporting all the elements of adverse possession by Karlberg and his predecessors in title all the way up to the fence, and entered Conclusion of law 6, which stated that although the fence was the boundary, Karlberg's title would be quieted only to the 45 foot strip east of the surveyed line.[19]

¶30 Karlberg's second suit sought to quiet title to the remaining area up to the fence.[20] Karlberg moved for summary judgment by relying on the findings and conclusions entered in the first action.[21] The trial court granted Karlberg's motion and established Karlberg's title to the entire strip of about 82 feet, with the fence as his eastern boundary.[22]

---

[17] Report of Proceedings at 556 (Nov. 2, 2009).

[18] Report of Proceedings at 580-81 (Nov. 2, 2009).

[19] Clerk's Papers at 12.

[20] Whatcom County Superior Court Cause No. 09-2-03432-6, filed December 29, 2009; Clerk's Papers at 363-69.

[21] Clerk's Papers at 548-49.

[22] Clerk's Papers at 213.

¶31 Otten contends, as he did below, that the first judgment awarding the 45 foot strip to Karlberg precluded Karlberg from later claiming the remaining land up to the fence.

¶32 When reviewing an order for summary judgment, we engage in the same inquiry as the trial court and will affirm summary judgment if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *Marthaller v. King County Hosp. Dist. No. 2*, 94 Wn. App. 911, 915, 973 P.2d 1098 (1999). All facts and reasonable inferences must be considered in a light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Marthaller*, 94 Wn. App. at 915.

¶33 Res judicata is a judicially created doctrine designed to prevent relitigation and to curtail multiplicity of actions by parties, participants, or privies who have had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *Corbin v. Madison*, 12 Wn. App. 318, 323, 529 P.2d 1145 (1974), *review denied*, 85 Wn.2d 1005 (1975). Also referred to as claim preclusion or as the prevention of "claim splitting," res judicata prohibits the relitigation of claims and issues that were litigated, or could have been litigated, in a prior action. *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009), *review denied*, 168 Wn.2d 1028 (2010); *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000), *review denied*, 143 Wn.2d 1006 (2001). The doctrine "puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial proceedings." *Walsh v. Wolff*, 32 Wn.2d 285, 287, 201 P.2d 215 (1949). Allowing a claimant to split a single cause of action or claim "would lead to duplicitous suits and force a defendant to incur the cost and effort of defending multiple suits." *Landry*, 95 Wn. App. at 782. The general rule is that "if an action is brought for part of a claim, a judgment obtained in the action precludes the plaintiff from bringing a second action for the residue of the claim." *Landry*, 95 Wn. App. at 782.

¶34 Application of res judicata requires identity between a prior judgment and a subsequent action as to (1) persons and parties, (2) causes of action, (3) subject matter, and (4) the quality of persons for or against whom the claim is made. Res judicata also requires a final judgment on the merits. *Pederson*, 103 Wn. App. at 67.

¶35 Karlberg's two actions both dealt with the disputed boundary between Karlberg and Otten, and both were actions for quiet title and ejectment. Karlberg nevertheless contends the second lawsuit dealt with different subject matter and was not the same cause of action because it involved two different pieces of property.

¶36 In general, two separate actions to quiet property in two separate and distinct pieces of property do not involve the same subject matter. *See St. Luke's Evangelical Lutheran Church of Country Homes v. Hales*, 13 Wn. App. 483, 487, 534 P.2d 1379 ("The property therein involved, not being the subject of this action, res judicata is not applicable."), *review denied*, 86 Wn.2d 1003 (1975); *see also Ollison v. Vill. of Climax Springs*, 916 S.W.2d 198, 201 (Mo. 1996) ("In successive quiet title actions involving the same parties or their privies, a judgment in the first action is not res judicata with respect to the second action if the land involved in the second action is separate and distinct from the land involved in the first action."). The above cases, however, involve parcels of land that are separate and distinct. In this case, there were two adjoining properties, and the only question was where to draw the boundary line. The question presented is whether a litigant may bring successive identical quiet title actions involving a disputed boundary, each time seeking to move the boundary so as to expand his own acreage.

¶37 Otten contends a change in the amount of property sought does not avoid the bar of res judicata, citing *Kinsey v. Duteau*, 126 Wash. 330, 218 P. 230 (1923). There, the court considered two separate quiet title suits involving the same property. Duteau held an executory contract to purchase the

property. He assigned it to Kinsey, his brother-in-law, and left Kinsey the funds necessary to pay off the contract while Duteau was away in Africa. It was agreed that Kinsey would be given a half interest in the property for his service. Kinsey paid off the contract and took a deed to the property in his own name in 1903. Duteau sued Kinsey in 1920 to recover a one-half interest in the property. His complaint was dismissed. In 1921, Kinsey sued Duteau to quiet title to the property. Duteau cross complained, this time suing for title to the entire property as the equitable and beneficial owner. The trial court found Duteau's claim precluded by his previous action. The application of res judicata was affirmed on appeal, with the court rejecting Duteau's argument that he had stated a different cause of action in the second suit by requesting title to the entire property as well as by adding an allegation of fraud:

> But we cannot think this change in the relief sought, or the additional allegation of fraud, in any manner affects the first action as a bar. Certainly, if the facts set forth in the first complaint did not entitle the appellant to recover even a one-half interest in the property, the same facts would not justify a recovery of the entire interest. *More than this, there can be no splitting of causes of action. A party cannot in one action sue for a part of that which he is entitled to recover, and in a subsequent action sue for the remainder when the right of recovery rests upon the same state of facts.*

*Kinsey*, 126 Wash. at 333-34 (emphasis added).

¶38 Focusing on the first rationale expressed in the above quotation, Karlberg contends *Kinsey* is not on point because "the facts set forth in the first complaint" did entitle Karlberg to recover half of the property. But Karlberg does not come to grips with the second rationale. He does not explain why seeking to recover the first 45 feet in the first action and the remainder in the second action should not be regarded as splitting a cause of action. In each case, his right of recovery rested on the same state of facts. Indeed, in the second action, the court relied on the findings and conclusions entered in the first action.

¶39 Otten also cites *Kemmer v. Keiski*, 116 Wn. App. 924, 68 P.3d 1138 (2003), as illustrative of res judicata as applied in a property dispute. In the first action, Keiski obtained an easement by necessity over Kemmer's property. The judgment limited the width of the easement to 12 feet. Kemmer built a fence along both sides of the 12 foot road. This made the road too narrow for the logging trucks Keiski wanted to bring in. He went back to court and obtained another judgment, this one expanding the width of the easement to as much as 30 feet to accommodate the logging trucks. The trial court viewed this second judgment as a clarification of what had been intended in the first judgment. The second judgment was reversed on appeal as precluded by the earlier judgment. Calling it a clarification was a misnomer; what it actually did was to order a substantial expansion of the easement granted in the first judgment. The second judgment "was not accomplished in compliance with CR 59, CR 60, or any other exception to preclusion that we are aware of." *Kemmer*, 116 Wn. App. at 934.

¶40 *Kemmer* is helpful in understanding what occurred here. Karlberg obtained precise relief in the first judgment—title to the first 45 feet. Karlberg had every opportunity in that first case to quiet title all the way to the fence. The findings and conclusions in the first action supported the relief he sought in the second action. Karlberg may have decided it was a mistake to limit his acquisition to 45 feet, but as *Kemmer* shows, commencement of a new and independent action upon the same subject matter is not an approved way to correct a mistake. *See also Hahl v. Sugo*, 169 N.Y. 109, 62 N.E. 135, 137 (1901) (Plaintiff's second suit sought to remove an encroachment on property; it was precluded because in plaintiff's first suit, which established ownership to the property, plaintiff could have asked for the encroachment to be removed but failed to do so.).

¶41 The principal case relied on by Karlberg to avoid preclusion is *Wash. Nickel Mining & Alloys, Inc. v. Martin*,

13 Wn. App. 180, 534 P.2d 59, *review denied*, 86 Wn.2d 1002 (1975). There, plaintiffs sued to quiet title to property occupied by defendants. The plaintiffs' surveyor defined the boundary line by assuming one of the section corners was a " 'lost corner,' " but the defendant's surveyors more convincingly established it was an " 'obliterated corner.' " *Wash. Nickel*, 13 Wn. App. at 182-83. The trial court dismissed the complaint after finding the plaintiffs had not carried the burden of proving the location of the boundary. This court determined that the findings about the corner were supported by substantial evidence. The plaintiffs argued that instead of affirming the dismissal, this court should send this case back for more fact finding to determine the actual location of the boundary line. We rejected this request and affirmed the order of dismissal. Anticipating a second suit, however, we held that the judgment of dismissal was res judicata only as to the location of the corner where the legal description would begin. *Wash. Nickel*, 13 Wn. App. at 182-83.

¶42 Karlberg argues that just as the plaintiff in *Washington Nickel* was free to go back to court to begin a new action that would finally determine the boundary line, he was free to begin a new action that would finally determine title to the remaining portion of the land between the survey line and the fence. His attempted analogy is not persuasive. In *Washington Nickel*, the first action determined only the location of the corner point where the legal description would begin. Here, the first action ended with a judgment containing a complete legal description of the 45 foot wide strip that Karlberg had acquired. The first action determined a line, not just a point. The judgment established the boundary line between Karlberg and Otten at 45 feet east of the survey line. And because it is the judgment that has preclusive effect, it is of no avail to Karlberg that the findings and conclusions in the first action supported title all the way up to the fence.

¶43 Where judgment in the first action determines the boundary line between two adjoining properties, the judg-

ment is preclusive of future attempts to move the boundary line in one direction or another. The rule is well stated in *Baroutsis v. Gregory*, 154 Pa. Super. 136, 139, 35 A.2d 559 (1944):

> While it is true, as appellant states, that the two actions are for different pieces of ground the same question, namely the location of the correct division line, was the pivotal issue in both actions. If appellant's theory is correct he might, by suing to recover only a part, instead of all, of the land he actually claims, subject a defendant to a series of suits. That cannot be done. A defendant would be entitled to relief from such an intolerable situation. The first trial resulted in a final, unappealed from, judgment, and determined the location of the disputed division line.

¶44 In summary, this case is like *Kinsey*, not like *Washington Nickel*. Just as Kinsey could have sued for his whole interest in the land, Karlberg could have sued for the entire 82 foot strip in the first action. Instead, he split his claim.

¶45 We conclude the two actions were identical and both involved the same subject matter. Res judicata bars Karlberg's second suit. The boundary line between Karlberg and Otten shall remain at 45 feet east of the survey line as established in the first judgment.

¶46 The same reasoning compels affirmance of the order dismissing Otten's lawsuit. Otten's opportunity to litigate his own adverse possession claim and adjust the boundary to his own benefit was through a counterclaim in Karlberg's first lawsuit. Having failed to make this claim in a timely manner, Otten too must abide by the boundary line established in Karlberg's first lawsuit.

¶47 The judgment of November 20, 2009, in cause number 08-2-00445-3 is affirmed. The summary judgment of August 13, 2010, in cause number 09-2-03432-6, which established the old fence as the boundary line, is reversed.

The order dismissing Otten's lawsuit in cause number 09-2-02890-3 is affirmed.

ELLINGTON and DWYER, JJ., concur.