# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

ROBERT W. DAHLGREN,
a single man,

              Respondent,

              v.

NORTHWEST TRUSTEE SERVICES,
INC., and CHASE HOME FINANCE,
LLC, successor by merger to CHASE
MANHATTEN MORTGAGE
CORPORATION, successor by merger
To CHASE MORTGAGE COMPANY,
a national banking corporation,

              Defendants,

              and

OMEGA P. PAULITE, a single woman,

              Appellant.

No. 70895-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 4, 2014

SPEARMAN, C.J. — This matter arises from appellant Omega Paulite's breach of a property settlement agreement that she entered into with respondent Robert Dahlgren as part of their divorce. Paulite was awarded the marital residence and agreed to assume sole liability for the mortgage note. But Paulite failed to remove Dahlgren from liability for the note and then defaulted on the mortgage. Subsequently, Dahlgren's credit was damaged and he brought an action for breach of the property settlement agreement. The issues before us are whether the trial court erred in (1) awarding Dahlgren $176,891.57 in attorney fees and (2) awarding Dahlgren $56,306 in damages on summary judgment. We conclude that (1) Paulite's objections to the attorney fee award are waived

because she did not raise them below and (2) summary judgment on damages was improper. We remand for further proceedings on damages.

FACTS

In 2003, Dahlgren and Paulite, who were married in 1999, borrowed money from Chase Manhattan Mortgage Corporation (Chase) to buy a home (the Property) in Bellevue, Washington. In 2007, they decided to divorce and executed a property settlement agreement (PSA) on July 31, 2007. Under the PSA, Paulite was awarded sole ownership of the Property and was required to assume sole liability for the mortgage. Dahlgren was to be released from liability. Dahlgren executed a quitclaim deed in favor of Paulite in November 2007. The PSA was incorporated into the decree of dissolution filed on January 30, 2008.

In October 2008, Dahlgren contacted Chase regarding the process of releasing him from liability on the mortgage note and deed of trust. Because the value of the Property was significantly more than the balance on the mortgage note, Chase agreed to release Dahlgren. Dahlgren complied with Chase's instructions and paid a processing fee.

In late 2009, Dahlgren learned that Paulite had defaulted on the loan and that Chase had reported the default negatively on his credit. When Dahlgren called Chase, he was informed that Paulite had not returned a consent form that Chase had sent to her. As a result, Chase had not released Dahlgren from liability. In 2010, Chase initiated nonjudicial foreclosure proceedings on the Property and issued a notice of trustee's sale, setting a sale date of November 29, 2010.

In November 2010, Dahlgren filed suit against Chase and the trustee. He alleged that Chase wrongfully refused to release him from liability under the note and deed of trust. The trustee's sale was subsequently stricken. In February 2011, Dahlgren amended his complaint to sue Paulite for breach of the PSA and decree of divorce. He alleged that she failed to (1) keep the obligation to Chase current; (2) remove him from the deed of trust and release him from the note; and (3) defend, indemnify, and hold him harmless from the Chase claim. He alleged that Paulite's acts and omissions had resulted in Chase reporting the default negatively on his credit. He further alleged that his credit rating was important to his work as a consultant on the nation's power grid because of regular background checks. Paulite filed an answer containing a general denial.

On September 7, 2011, Dahlgren filed a motion for partial summary judgment, contending there was no genuine issue of material fact regarding Paulite's liability for breach of the PSA. Dahlgren sought an order that would allow the Property to be sold (through the imposition of a constructive trust or through the appointment of a receiver) and the proceeds used to satisfy the claims of Chase, Dahlgren, and any other lien holders.

Paulite did not timely respond and did not appear at the October 7, 2011 hearing on the motion.[1] On the day of the hearing, the trial court entered an order granting Dahlgren's motion, ruling that he was entitled to summary judgment on liability and appointing him as acting trustee for the Property. The order

---

[1] Paulite filed an untimely reply on October 11, 2011. CP 37-39.

contained findings of fact and conclusions of law. Also on the day of the hearing, Dahlgren gave Paulite a 20-day notice to vacate the Property.

Over the next year, Dahlgren was delayed from taking possession of the Property. In October 2011 and then in May 2012, Paulite filed for chapter 13 bankruptcy. Dahlgren filed an adversary action in both matters. The first proceeding was dismissed by the bankruptcy court in March 2012. The second proceeding was filed when Dahlgren had an unlawful detainer action pending against Paulite and stayed the process of removing her from the Property. After the automatic stay expired on June 8, the state court action could proceed.

On May 3, 2012, on Dahlgren's motion, the trial court entered a CR 54(b) order directing the entry of final judgment as to its October 2011 partial summary judgment order.

At some point, Paulite's family members and innocent tenants had begun living in the Property and she had entered into written leases with them. Dahlgren filed unlawful detainer actions against Paulite and her family members and sought writs of restitution. By the end of October 2012, Dahlgren had obtained writs of restitution for Paulite and her family members, and the innocent tenants had moved out.[2] Dahlgren brought the Property to a saleable condition and then moved for the appointment of a custodial receiver so that the Property could be sold free and clear of the judgment liens against Paulite. On January 7, 2013, the court entered an order appointing a receiver. The court also entered findings of

---

[2] Dahlgren had worked with the innocent tenants so that they could stay through October 2012, the end of their lease term.

4

fact and conclusions of law that Dahlgren was entitled to reimbursement for his expenses, costs, and attorney fees incurred in getting Paulite out of the Property and preparing it for sale.

On January 17, 2013, the bankruptcy court entered an order stating that the Property could be sold in the state court receivership proceedings.[3] The receiver, after obtaining an acceptable purchase and sale agreement, moved for authorization to sell the Property. Dahlgren filed a limited objection on March 1, agreeing to the sale on the condition that his expenses, costs, and attorney fees were paid in accordance with the court's orders entered on October 7, 2011 and January 7, 2013. Paulite filed an objection to the motion on March 8.

On March 11, 2013, the court entered an order authorizing the receiver to close the sale of the Property. As part of the order, the court awarded Dahlgren $176,891.57, as well as costs in preparing the Property for sale.[4] Dahlgren received $88,381.52 from the sale; no additional proceeds remained. Paulite sought discretionary review, assigning error to the award of attorney fees.

The issue of Dahlgren's damages for his breach of PSA claim was still unresolved. On March 27, 2013, Dahlgren moved for summary judgment on damages, seeking $56,306 for losses of business income he had allegedly

---

[3] By then, the bankruptcy court had granted Paulite's request to convert her second bankruptcy action to a chapter 7 proceeding.

[4] The order stated:
Plaintiff Dahlgren is entitled to full reimbursement of his attorney's fees in the total amount of $176,891.57, as reimbursement for Payments made to Enhance the Collateral which shall be charged against and paid out of the receivership, and shall be entitled to a first and paramount lien against the Property in the same manner as the Receiver's fees and costs.
Clerk's Papers (CP) at 66.

suffered in 2010. Paulite responded, submitting her own declaration. On April 26, 2013, the trial court granted Dahlgren's motion and entered an order awarding $56,306 in damages. Paulite sought discretionary review. Dahlgren moved for $17,946.12 in attorney fees and costs incurred after the sale of the Property. The court denied the motion.

On August 12, 2013, the trial court entered a final judgment and order of dismissal, which included findings of fact and conclusions of law confirming its prior rulings on liability, damages, and attorney fees. Paulite appealed. This court closed the petitions for review and consolidated the issues with Dahlgren's appeal.[5]

## DISCUSSION

The two issues before us are (1) whether the trial court properly awarded $176,891.57 in attorney fees to Dahlgren in March 2013 and (2) whether the trial court properly granted summary judgment on damages in April 2013, awarding $56,306 to Dahlgren for his breach of PSA claim.[6]

### Award of Attorney Fees

A trial court's award of attorney fees will not be overturned absent an abuse of discretion. Progressive Animal Welfare Soc. v. University of Wash., 114

---

[5] On August 15, 2013, Dahlgren moved in the adversary bankruptcy action for the judgment to be found to be non-dischargeable. While the motion was pending, Paulite moved on October 2 to have the case re-converted to a chapter 13 proceeding. On October 7, the bankruptcy court ruled that the judgment was non-dischargeable. On November 12, the court denied Paulite's motion to reconvert. Paulite's case was dismissed without discharge on November 25, 2013.

[6] While Paulite devotes a significant amount of briefing to her contention that the trial court erred in granting Dahlgren's motion for partial summary judgment in October 2011, Paulite has not appealed that order and it is not properly before this court.

Wn.2d 677, 688, 790 P.2d 604 (1990). A trial court abuses its discretion when "the exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." Id. at 688-89.

Paulite argues that the trial court's March 2013 award of attorney fees must be reversed because (1) Dahlgren was not a prevailing party, where a final judgment had not yet been entered at the time of the award and (2) the attorney fees were not reasonable under a lodestar analysis[7] and included fees for work that was unrelated, unnecessary, and unproductive. But Paulite did not make these arguments below.[8] Generally, this court does not consider arguments that are raised for the first time on appeal. Karlberg v. Otten, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012); see also RAP 2.5(a); Draper Mach. Works, Inc. v. Hagberg, 34 Wn. App. 483, 488, 663 P.2d 141 (1983) (refusing to consider for first time on appeal whether trial court improperly determined amount of attorney fees awarded). Nor does Paulite explain why she may raise these objections for the first time on appeal. Furthermore, she does not argue that the trial court erred in its October 2011 or January 2013 orders, which awarded Dahlgren all of his attorney fees as administrative costs and expenses.[9]

---

[7] See Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 675 P.2d 193 (1983).

[8] It appears that Paulite objected to Dahlgren's request for attorney fees, but the objection does not appear in the record and we are unable to determine what arguments Paulite did make. Nonetheless, Paulite does not dispute Dahlgren's assertion that she failed to raise these arguments below.

[9] The trial court's October 7, 2011 order granting partial summary judgment included the following conclusion of law:

DAHLGREN is empowered by this Court to take such steps as may be necessary so that the Subject Property can be sold as set forth in this Order. This includes, but is not limited to:

. . .

Paulite also contends that the trial court failed to enter findings of fact and conclusions of law regarding the reasonableness of the attorney fee award and that remand is therefore required under Mahler v. Szucs, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998). Under Mahler, trial courts must create an adequate record for review of fee award decisions and the absence of such a record will result in remand to the trial court to develop such a record. Id. at 435.

The trial court's August 2013 order of dismissal confirmed the court's prior award of attorney fees and included the following findings of fact:

> 5. Paulite has violated the court orders dated October 7, 2011 and July 19, 2012. She failed to respect the findings of the court related to Dahlgren's right to control the Subject Property. She failed to cooperate in the sale of the Subject Property. These violations resulted in additional and otherwise avoidable attorney's fees and costs being incurred by Dahlgren.
>
> . . . .
>
> 7. This dispute has involved a multiplicity of litigation as a result of Paulite's actions. These include this matter, four bankruptcy court actions, three unlawful detainer actions, and two complaints by Paulite to the Washington State Bar Association. Within this action there was a motion for injunction, three motions for summary judgment, imposition of a constructive trust, appointment of a receiver and sale of the Subject Property, and this motion, as well as others. The multiplicity of actions is a direct result of the acts and omissions of Paulite, and attorney's fees incurred by Dahlgren in those actions are caused by Paulite's improper and unconscionable conduct. All of these actions relate to Dahlgren's efforts to obtain the benefits of the Property Settlement Agreement ("PSA") and Dissolution Decree, and result from Paulite's breach of her obligations under that Agreement and Decree.

---

> d. To be compensated for his time, costs and fees as an administrative expense[.]

CP at 34-35. The January 7, 2013 order confirmed Dahlgren's right to recover his attorney fees and costs as "administrative expenses," CP at 932, and further states:

> 2.36 To the extent Plaintiff has made or will make Payments to Enhance the Collateral, any and all such payments shall be charged against and paid out of the receivership, and shall be entitled to a first and paramount lien against the Property in the same manner as the Receiver's fees and costs.

CP at 940.

8. Dahlgren's attorney's fees and costs requested relate to breaches by Paulite of the PSA and/or Note and Deed of Trust. The attorney's fees and costs requested could have been avoided if Paulite had complied with her obligations. Many of the attorney's fees and costs incurred by Dahlgren arose directly from Paulite's procedural hurdles to the sale of the Subject Property.

9. A review of the file in this matter discloses that this dispute has involved a wide range of legal issues and procedural complexities. .

. . . .

10. Many of these issues were novel, difficult and time-consuming. Having such a wide variety of issues in one matter presented challenges that were unusual if not unique to this case. The willingness of Dahlgren's attorneys to work on these numerous areas avoided a multiplicity of bankruptcy, family law and debtor-creditor counsel that likely reduced the amount of attorney's fees that otherwise would have been incurred.

CP at 122-25. We conclude that these findings, none of which Paulite specifically challenges, were adequate to support the award of attorney fees. Furthermore, we conclude that where Paulite's arguments on appeal as to why the award was in error were waived, the trial court's failure to enter more specific findings of fact or conclusions of law as to the reasonableness of the fee award was harmless. We do not understand Mahler to stand for the proposition that, even though none of a party's arguments on appeal asserting error in an attorney fee award (stated differently, the bases for reviewing the award) were made below, the absence of findings of fact and conclusions of law automatically requires remand.

Summary Judgment on Damages

This court reviews summary judgment de novo. Davies v. Holy Family Hosp., 144 Wn. App. 483, 491, 183 P.2d 283 (2008). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. (citing CR

56(c); Ruff v. County of King, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)). A motion for summary judgment "'should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.'" Lewis v. Bours, 119 Wn.2d 667, 669, 835 P.2d 221 (1992) (quoting Marincovich v. Tarabochia, 114 Wn.2d 271, 274, 787 P.2d 562 (1990)). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 485, 258 P.3d 676 (2011). The initial burden is on the moving party to show that there are no genuine issues of material fact. Pacific Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276 (2006). "Once the moving party has met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a genuine issue of material fact." Id. at 351.

In a breach of contract claim for damages, a plaintiff must show the breach proximately caused the damages claimed. Northwest Indep. Forest Mfrs. v. Dep't of Labor and Indus., 78 Wn. App. 707, 712, 899 P.2d 6 (1995). Damages recoverable for a breach of contract are those which "'may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.'" Gaglidari v. Denny's Rests., Inc., 117 Wn.2d 426, 446, 815 P.2d 1362 (1991) (quoting Hadley v. Baxendale, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854)).

Here, the damages sought by Dahlgren were for lost business income as a result of the drop in his credit rating, which he alleged was due to Paulite's breach of the PSA. Paulite does not dispute that Dahlgren suffered damage to his credit rating after her default or that his business income declined in 2010; she only disputes that the decline in his income was caused by her breach of the PSA. She contends summary judgment was improper because (1) Dahlgren's evidence of the financial harm he suffered due to her breach of the PSA was circumstantial and the inferences from his evidence were capable of several conclusions and (2) Paulite's declaration created an issue of fact that Dahlgren's lost business income was proximately caused by factors unrelated to his credit rating. We agree with Paulite that Dahlgren did not meet his initial burden of showing the absence of an issue of material fact as to the amount of damages.

Dahlgren submitted circumstantial evidence to prove the amount of his damages.[10] He submitted evidence that his credit rating before Paulite's default was in the 800s, that it dropped to the mid-600s after the default, and that it improved to the mid-700s after the foreclosure was stopped. He submitted evidence that, after the drop in his credit rating, his available credit was reduced, he was denied extensions of credit, and he lost over $20,000 in credit usage. He also submitted evidence, in the form of his declaration, that his company could not pursue hiring because of the reduction in his available credit; that he was

---

[10] Dahlgren did not offer direct evidence of his lost business income. For example, he did not offer evidence that current clients of his company, Jet Set Labs, terminated the company's services because of his credit report or evidence that prospective clients refused to hire the company because of his credit report.

11

ready and able to work in 2010; and that he experienced a drop in his annual income in 2010 because of his inability to bring in new clients. Finally, Dahlgren provided his tax returns for the years 2006 to 2010. His tax returns demonstrated that his average annual adjusted gross income for the years 2006 to 2009 was $162,857. His 2010 tax return showed an adjusted gross income of $106,551. Thus, the difference between his average income for several years leading up to 2010 and his income in 2010 was $56,306. On the basis of this evidence, Dahlgren sought a damages award of $56,306 for lost income in 2010.

We conclude that the amount of damages was improperly decided on summary judgment on the basis of Dahlgren's evidence. If the evidence and the inferences therefrom were considered in the light most favorable to Paulite, it cannot be said that reasonable minds could conclude only that the entire decrease in Dahlgren's income in 2010 was due to Paulite's breach of the PSA and default on the Chase mortgage. He failed to meet his initial burden to demonstrate there were no genuine issues of material fact.

The last issue before us is whether, as Paulite contends, the trial court erred in including the following language in its summary judgment order on damages:

> The Court also find[s that] Dahlgren is entitled to a setoff of damages resulting from 2011 and 2012 wage loss and loss of credit capacity, to be proven in the event Paulite pursues any alleged damages from the property settlement agreement.

CP at 97. Paulite contends that the "alleged damages" referred to in the court's order are based on her claim, unrelated to the lawsuit before the court, alleging

Dahlgren's fraudulent concealment of assets. We agree with Paulite that the language improperly appears to allow Dahlgren to maintain jurisdiction for future claims that had not been pleaded or proven below (where his amended complaint was filed in February 2011) and that the language should be stricken on remand.

Attorney Fees on Appeal

Dahlgren seeks attorney fees on appeal, citing RAP 18.1 and the attorney fee provision in the PSA.[11] We deny the request. Where both parties prevail on major issues, there is no prevailing party. <u>Kysar v. Lambert</u>, 76 Wn. App. 470, 493, 887 P.2d 431 (1995) (citing <u>American Nursery Prods., Inc. v. Indian Wells Orchards</u>, 115 Wn.2d 217, 235, 797 P.2d 477 (1990)). Because Dahlgren prevails on only one of two major issues on appeal, he is not the prevailing party.

Affirmed in part, reversed in part, and remanded for further proceedings.

WE CONCUR:

Spearman, C.J.

Trickey, J.

---

[11] The attorney fee provision in the PSA provides, in relevant part, that if an action "becomes necessary, whether at law or in equity, to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of attorney's fees and suit costs reasonably incurred in such enforcement action." CP at 181.