# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

|  |  |
|---|---|
| BALWINDER DEOL; RACHPAL JOHAL; JASBIR SANDHU; PARMJIT NAGRA; GURMEL SINGH; SUKHMANDER SANDHU, TEJINDER RAWDAWA & BALJIT DESANJH as members of VANCOUVER SIKH SOCIETY, a Washington corporation dba GURUDWARA SAHIB VANCOUVER, a Washington corporation,<br><br>    Respondents/Cross Appellants,<br><br>    v.<br><br>JAGIT PREHAR & ASHWINDER K. PREHAR, husband and wife; KARANDEEP SINGH; DOES 1 through 20, inclusive,<br><br>    Appellants/Cross Respondents. | No.  50722-6-II<br><br><br><br><br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — This case arises out of the purchase of real property used as a place for religious worship.  Vancouver Sikh Society (VSS)[1] brought claims against Jagjit and Ashwinder Prehar, the owners of the real property, for conversion of corporate funds and quiet title.  After a bench trial, the trial court found that the Prehars had converted funds, and it entered judgment in favor of VSS.  The Prehars appeal the trial court's judgment, arguing, among other things, that

---

[1] VSS was a nonprofit corporation.

the trial court erred by concluding that conversion occurred because that conclusion is not supported by the trial court's findings of fact. VSS makes several arguments in a cross appeal.

We hold that the trial court's conclusion that conversion occurred is not supported by the trial court's findings of fact, and we reverse the judgment on this basis and remand for the trial court to vacate the judgment. We do not consider the remaining arguments. We also reject VSS's cross appeal.

FACTS

In November 2011, several individuals, including the Prehars and Parmjit Nagra, began discussing the formation of a new Sikh society known as a Gurudwara,[2] in Vancouver, Washington. These individuals located a property (St. Johns property) for a place of worship, and made an offer to purchase, contingent on financing. In January 2012, Jagjit and Harpreet Minhas formed VSS, and a corporate bank account was established at Wells Fargo Bank in downtown Vancouver (VSS bank account). To facilitate the purchase of the St. Johns property, they deposited "donations to VSS" into the VSS bank account. Clerk's Papers (CP) at 218. As of July 2, 2012, the account balance was $137,322.04.

Ultimately, these individuals were unable to obtain financing, and in September 2012, they rescinded the purchase agreement. Following the rescission, various individuals who had contributed to the VSS bank account requested a refund of their donation. All requests for refund were honored, leaving $91,994.00 in the VSS bank account.

---

[2] Gurudwara is also spelled "Gurdwara" in the record on appeal.

On April 5, 2013, the Prehars, Nagra, and Maninderjits Kullar entered into a second purchase agreement for the St. Johns property. On April 29, VSS deposited a $5,000 check into escrow for earnest money. On May 1, VSS was dissolved.[3] On May 2, the Prehars withdrew $85,000 from the VSS bank account and deposited it into escrow for the purchase of the St. Johns property.

On May 3, the parties to the second purchase agreement signed an addendum, stating in part that the "[s]ole purchasers are to be: [Jagjit] S. Prehar and Ashwinder K. Prehar." CP at 219. As sole purchasers, the Prehars purchased the property by signing a promissory note for $160,000, and tendering $216,022.11 of their personal cash[4] and $85,000 funds transferred from the VSS bank account. The sale of the property closed on June 28, 2013, for a total purchase price of $461,022.11.

In July, Jagjit, Manjit Chahil, and Nagra formed Gurudwara Sahib Vancouver WA Inc. (GSV) as a nonprofit corporation. In December, "[i]nconsistent with the actual donations to VSS in 2012, GSV issued donation receipts . . . to Jagjit Singh[5] (Prehar) and BDS Freight (Ashwinder Prehar)" and to "Nagra, Harev Atwal, Hardev Singh, JK Petroleum, and Daljit Singh/Majit Singh." CP at 218-19. Presumptively, the donors used these receipts to receive tax benefits.

---

[3] It appears VSS was administratively dissolved by the State of Washington for failure to file an annual report.

[4] The cash was comprised of $161,022.11 the Prehars received by obtaining a private loan on their home, $50,000 from Ashwinder Prehar, and $5,000 from Jagjit Prehar.

[5] There are multiple people who use the last name "Singh" in the record. VSS's counsel explained that "[t]he Sikh people use the name Singh as a last name as a way of showing equality and avoiding family names." 1 Report of Proceedings (July 17, 2017) at 19.

Together, multiple members of the Sikh community worked to renovate the St. Johns property, and they attended religious services and other activities at the property for over a year.

Nagra and Manjit Singh testified that they never asked the Prehars to return their contributions because the funds were a donation to be used for VSS. They both testified that VSS brought the lawsuit for VSS to obtain sole title to the St. Johns property and for the community to have a place to worship.

Nagra testified that the Prehars were listed as the sole purchasers of the property because Jagjit allegedly said it would be easier to obtain funding. Nagra also testified that Jagjit told him that Jagjit was going to use his own money and take a loan on his own house in order to buy the St. Johns property. Various witnesses at trial appear to have believed that the Prehars would be solely responsible for the loan but that title to the property would be in "everyone's name." 1 Report of Proceedings (July 17, 2017) at 82.

After considerable disagreement regarding title to the property, Nagra and Manjit Singh requested that the Prehars transfer title of the St. Johns property to VSS. On August 12, 2014, the Prehars offered to transfer title to the St. Johns property for payment of $490,000. Nagra and Manjit Singh requested two weeks to consider the offer. After two weeks, they had not obtained financing, and the Prehars revoked the offer. As a result of heightened tensions, the Prehars issued trespass warnings to several individuals, excluding them from the property.

No. 50722-6-II

On January 14, 2016, VSS filed a complaint against the Prehars. On January 20, VSS was reinstated.[6] On January 26, VSS filed an amended complaint against the Prehars. VSS alleged causes of action for misrepresentation, conversion of corporate funds, corporate accounting and receivership, partition, quiet title, and injunction.

The case proceeded to a bench trial. At trial, it appears that VSS's main objective was to obtain title to the St. Johns property.[7] After trial, the court entered findings of fact and conclusions of law.

The trial court found that VSS and GSV are "currently valid Washington nonprofit corporations."[8] CP at 218. The trial court also found that "[t]he negotiating parties further agreed that [the Prehars] would buy the property 'sole[l]y' in their name and further understood and agreed that VSS finances would be used by [the Prehars] to purchase the property." CP at 219. The trial court further found that

> [t]hroughout the history of the parties['] business dealings, there was [an] open agreement that [the Prehars] would purchase the property in [their] name and the parties would negotiate an ultimate transfer of the property to the association. However, there is no evidence that the parties had reached any agreement as to the transfer terms or conditions.

CP at 220. The trial court found that the Prehars used $85,000 of VSS's funds with VSS's permission.

---

[6] The Prehars have filed a separate action in Clark County (Clark County Superior Court case number 16-2-01538-1) regarding the validity of VSS's reinstatement, which is still pending. The individuals who reinstated VSS differ from the individuals who initially formed the corporation.

[7] Witnesses testified that the purpose of the lawsuit was to obtain title to the St. Johns property.

[8] The Prehars do not assign error to the trial court's finding that VSS is currently a valid Washington nonprofit corporation.

5

The trial court also found that "[the Prehars] by seceding from VSS, and forming GSV have forfeited any rights to the [$30,000 in] donations they completed to VSS." CP at 220. The trial court found that "[p]laintiff's evidence does not show that [the Prehars] misrepresented, misappropriated or breached their fiduciary duties to VSS. At the time the funds were applied to the real estate purchase the managing members of VSS approved of the use and anticipated the use of the funds for the purchase of the real property in [the Prehars'] name." CP at 220.

The trial court concluded that the case "has multiple agreements and relationships resulting in fault created by both parties." CP at 221. The trial court also concluded that on August 28, 2014, "[w]ithin two weeks of August 12, 2014, when demand to return VSS property was made, [the Prehars] intentionally interfered with the $85,000 belonging to VSS by unlawfully retaining it." CP at 219.

The trial court denied VSS's claims of corporate accounting and receivership and quiet title. The trial court also denied the Prehars' affirmative defenses.

The trial court imposed prejudgment and postjudgment interest accruing at a rate of 12 percent. The Prehars appeal, and VSS cross appeals.

## ANALYSIS

A. *Standard of Review*

We review the trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. *Herring v. Pelayo*, 198 Wn. App. 828, 832, 397 P.3d 125 (2017). Substantial evidence is evidence sufficient to persuade a rational fair-minded person that the premise is true. *Scott's Excavating Vancouver, LLC v. Winlock Prop., LLC*, 176 Wn. App. 335,

341-42, 308 P.3d 791 (2013). The party challenging the trial court's findings of fact has the burden to prove they are not supported by substantial evidence. *Scott's Excavating*, 176 Wn. App. at 342. Unchallenged findings of fact are verities on appeal. *Herring*, 198 Wn. App. at 833. And an unchallenged conclusion of law becomes the law of the case. *Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

Findings of fact are determinations of whether the evidence shows that something existed or occurred. *Casterline v. Roberts*, 168 Wn. App. 376, 382, 284 P.3d 743 (2012). Conclusions of law are determinations made through legal reasoning or interpretation of the legal significance of facts. *Casterline*, 168 Wn. App. at 382-83. We defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *Scott's Excavating*, 176 Wn. App. at 342. Generally, we do not consider issues raised for the first time on appeal. RAP 2.5; *Kitsap County Consol. Hous. Auth. v. Henry-Levingston*, 196 Wn. App. 688, 707, 385 P.3d 188 (2016).

B.      *Conversion*

The Prehars argue that the trial court's conclusion that they converted funds is unsupported by its findings. Specifically, the Prehars argue that the trial court's finding that VSS demanded return of the funds is unsupported by substantial evidence, and consequently, the remaining findings of fact do not support the conclusion of law. We agree.

1. *Legal Principles*

Conversion is the unjustified, willful interference, without legal justification, which deprives a person of possession of property that they are entitled to. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 78, 196 P.3d 691 (2008). "'One in the possession of a chattel as bailee or

otherwise, who on demand, refuses to surrender its possession to another entitled to the immediate possession thereof, is liable for its conversion.'" *Judkins v. Sadler-MacNeil*, 61 Wn.2d 1, 5, 376 P.2d 837 (1962) (quoting Restatement (First) of Torts §237 (1934)).

To establish a claim for conversion, the plaintiff must have legal title to or possessory interest in the converted property. *See Repin v. State*, 198 Wn. App. 243, 271, 392 P.3d 1174 *review denied*, 188 Wn.2d 1023, 398 P.3d 1137 (2017); *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 721-22, 197 P.3d 686 (2008). Further, the plaintiff must demonstrate that the defendant exercised dominion or ownership over plaintiff's property, depriving the plaintiff of possession or use of their property. *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn2d 601, 619, 220 P.3d 1214 (2009); *Potter*, 165 Wn.2d at 78.

"Money, under certain circumstances, may become the subject of conversion. However, there can be no conversion of money unless it was wrongfully received by the party charged with conversion, or unless such party was under obligation to return the specific money to the party claiming it." *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 378, 705 P.2d 1195 (1985). If the defendant did not wrongfully receive the funds, the plaintiff must demonstrate that the defendant was under an obligation to return the funds. *Pub. Utility Dist.*, 104 Wn.2d at 378-79; *see also Davenport*, 147 Wn. App. at 723. In some circumstances, plaintiff's demand for the return of property can create an obligation to return the property. *See Judkins*, 61 Wn.2d at 4-5; *see also* Restatement (Second) of Torts § 237 (1965).

2. *No Demand for Return of Specific Funds*

The Prehars assign error to the trial court's conclusion that conversion occurred "when demand to return VSS property was made." CP at 219. The Prehars argue that the trial court's

finding that a demand to return VSS's money was made is unsupported by substantial evidence, and therefore, its conclusion is unsupported.

We consider whether the trial court's finding that "demand to return VSS property was made" is supported by substantial evidence. *Herring*, 198 Wn. App. at 832.

Here, the trial court found that the parties agreed that the Prehars would use VSS's funds to purchase the property in their own names. The trial court then concluded that based on the parties' agreement, conversion did not occur until the Prehars unlawfully interfered with VSS's possession of its property in August 2014, over a year after the Prehars used the funds to purchase the St. Johns property.

Notably, Nagra and Manjit Singh testified that they never asked the Prehars to return their contributions to VSS. They clarified that the purpose of the lawsuit was for VSS to *obtain title to the property*, and for the community to own the building for a place to worship. There is no evidence in the record that VSS demanded the Prehars return the $85,000. And although Nagra and Manjit Singh testified that they asked the Prehars to transfer title of the St. Johns property to VSS, conversion requires that the party is legally entitled to the property, and VSS was not legally entitled to the St. Johns property. *Davenport*, 147 Wn. App. at 721-22.

In addition, we note that Nagra testified that the request for transfer of the real property was a request for the Prehars to title the property *solely* in VSS's name. Had this transfer occurred, the Prehars would have been responsible for all the debt they incurred in order to purchase the property, but without any ownership interest in the property.

We hold that the demand to transfer title to the St. Johns property was insufficient to establish the tort of conversion for $85,000. VSS cannot establish conversion based only on the

9

Prehars' use of funds, which were not wrongfully received, and were used in the manner the parties to the transaction agreed upon. *See Judkins*, 61 Wn.2d at 4; *Davenport*, 147 Wn. App. at 722.

We also hold that the trial court's finding that "[w]ithin two weeks of August 12, 2014, when demand to return VSS property was made, [the Prehars] intentionally interfered with the $85,000 belonging to VSS by unlawfully retaining it" is unsupported by the evidence. Without a finding of fact that the Prehars interfered with the $85,000 belonging to VSS, the trial court's conclusion that conversion occurred in August 2014 is unsupported by its findings.[9]

C. *Other Claims*

VSS makes additional claims for the first time on appeal. Specifically, VSS argues that the Prehars are responsible for conversion based on a theory of unjust enrichment and constructive trust, the Prehars are liable for breach of Jagjit's fiduciary duty,[10] and the Prehars are liable under the doctrine of money had and received. VSS urges us to review its additional claims based on the principle that we can affirm on any ground. It is true that we may address an issue raised for the first time on appeal if we so choose, but we are not bound to do so and usually decline. *Smith v. Shannon*, 100 Wn.2d 26, 38, 666 P.2d 351 (1983); *Karlberg v. Otten*,

---

[9] The Prehars also argue on appeal that the trial court erred by rejecting their affirmative defense of equitable estoppel, by determining that they forfeited funds to VSS, and by miscalculating interest. Because we reverse on other grounds, we do not consider these arguments.

[10] Other than claiming a cause of action for corporate accounting and receivership which mentioned fiduciary duty, VSS's complaint did not allege a cause of action for breach of fiduciary duty.

167 Wn. App. 522, 531-32, 280 P.3d 1123 (2012). We do not consider VSS's newly asserted claims.

Even if we were inclined to consider VSS's equitable claims, the record is insufficient for us to decide these claims as a matter of law. The record contains conflicting evidence regarding whether the Prehars unfairly benefited from the transaction. The trial court found that in order to purchase the property, the Prehars assumed personal obligations in the amount of $376,022.11. And Jagjit testified that he allowed VSS to use the temple rent free for several months. But the record lacks sufficient information regarding property values and regarding the amounts that the respective parties invested into the property for the betterment of the temple and VSS. An appellate court does not evaluate evidence, make factual findings, or evaluate such issues.

To consider VSS's equitable claims for the first time on appeal would be particularly unfair to the Prehars, who did not have an opportunity to develop defenses or litigate the claims.[11] Accordingly, we decline to consider VSS's equitable claims for the first time on appeal. *See, e.g.*, *Shannon*, 100 Wn.2d at 38 (choosing not to address issue raised for the first time on appeal where equities weigh against appellant); *Karlberg*, 167 Wn. App. at 531-32.

D.    *Vancouver Sikh Society's Cross Appeal*

On cross appeal, VSS argues that (1) the trial court erred by finding that "the managing members of VSS approved of the use and anticipated the use of the funds for the purchase of the

---

[11] Washington is a notice pleading state. CR 8; *Gunn v. Riely*, 185 Wn. App. 517, 528, 344 P.3d 1225 (2015). Parties are required to give the opposing party fair notice of the nature of the claims and the legal grounds of those claims. *Reagan v. St. Elmo Newton*, 7 Wn. App.2d 781, 436 P.3d 411, 422 (2019)). VSS's assertion of new causes of action for the first time on appeal circumvents the notice pleading rules and, if allowed, would deprive the Prehars the opportunity to conduct discovery, present evidence, or otherwise respond in a meaningful way.

real property in Defendant's name;" (2) the trial court erred by awarding judgment in $85,000 instead of $90,000; and (3) the trial court erred by assessing prejudgment interest beginning on August 28, 2014. Br. of Resp't at 34 (quoting CP at 220). VSS's arguments on cross appeal fail.

VSS assigns error to the trial court's finding that "the managing members of VSS approved of the use and anticipated the use of the funds for the purchase of the real property in Defendant's name." Br. of Resp't at 34 (quoting CP at 220).

VSS argues that the trial court's finding is not supported by substantial evidence. VSS appears to argue that the finding lacks substantial evidence because the record does not contain evidence of a board of directors, or board meetings or decisions. But at trial, evidence established that Jagjit was one of the individuals who formed VSS, and that the Prehars, Nagra, and Maninderjits Kullar authorized the property to be purchased solely in the Prehar's name. VSS fails to provide authority for the position that the record must contain evidence of board meetings or decisions to support the trial court's findings that the managing members approved of and anticipated the use of VSS funds for the purchase of the property. The trial court did not find that an official corporate action had occurred. Thus, VSS's claim fails.

VSS also argues that the trial court erred by not including an additional $5,000 for earnest money in the judgment and by setting the commencement date of prejudgment interest at August 28, 2014. Because we reverse the trial court's judgment, we do not address these claims.

CONCLUSION

Because the trial court's findings do not support its conclusion that conversion occurred, we reverse and remand for the trial court to vacate the judgment. We also reject VSS's cross appeal.

12

No. 50722-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, C.J.

_____
Lee, J.